ORIGINAL                    **CV19-5310**

MAUSKOPF, J.                          **FILED**
                                    IN CLERK'S OFFICE
                                 U S DISTRICT COURT E.D.N.Y

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF**          ★ SEP 1 3 2019 ★
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

                                        BROOKLYN OFFICE

| United States District Court | District EASTERN |
|---|---|

| Name (under which you were convicted): BALL, RAYMOND | Docket or Case No.: 2228/2012 |
|---|---|

| Place of Confinement: OTISVILLE CORRECTIONAL FACILITY | Prisoner No.: 15A1060 |
|---|---|

| Petitioner (include the name under which you were convicted) RAYMOND BALL | v. | Respondent (authorized person having custody of petitioner) ANGELENE STEVENSON |
|---|---|---|

| The Attorney General of the State of | NEW YORK |
|---|---|

**PETITION**

1. (a) Name and location of court that entered the judgment of conviction you are challenging: SUPREME COURT OF QUEENS : PART 41

   (b) Criminal docket or case number (if you know): 2228/2012

2. (a) Date of the judgment of conviction (if you know): JANUARY 30, 2015

   (b) Date of sentencing: MARCH 4, 2015

3. Length of sentence: 10 YEARS - 5 POST

4. In this case, were you convicted on more than one count or of more than one crime? Yes ☑   No ☐

5. Identify all crimes of which you were convicted and sentenced in this case: TWO COUNTS OF ROBBERY IN THE SECOND DEGREE, ASSAULT IN THE THIRD DEGREE, CRIMINAL POSSESSION OF STOLEN PROPERTY IN THE FIFTH DEGREE.

6. (a) What was your plea? (Check one)

   (1) Not guilty ☑        (3) Nolo contendere (no contest) ☐

   (2) Guilty ☐            (4) Insanity plea ☐

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? N/A

_____

_____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

Jury ☑   Judge only ☐

7. Did you testify at either a pretrial hearing, trial or a post-trial hearing?

Yes ☐ No ☑

8. Did you appeal from the judgment of conviction?

Yes ☑ No ☐

9. If you did appeal, answer the following:

(a) Name of court: APPELLATE DEVESION SUPREME COURT OF THE STATE OF N.Y SECOND JUDICIAL DEPARTMENT

(b) Docket or case number (if you know): 2015-01907

(c) Result: AFFIRMED

(d) Date of result (if you know): JUNE 6, 2018

(e) Citation to the case (if you know): 162 AD3 680

(f) Grounds raised: MY CONVICTION WAS BASED ON PERJURED TESTIMONY, NO PROBABLE CAUSE TO STOP, SEARCH AND ARREST, RIGHT TO BE PRESENT AT A FULL AND FAIR HEARING, TAINTED IDENTIFICATION, AND IDENTIFICATION PROCEEDURE, I WAS DENIED TRANSCRIPTS FOR DEFENCE AT TRIAL AND ON APPEAL, AND THE STATE COURTS DECISIONS WERE NOT ADEQUATELY SUPPORTED BY THE RECORD.

(g) Did you seek further review by a higher state court?   Yes ☑ No ☐

If yes, answer the following:

(1) Name of court: STATE OF NEW YORK COURT OF APPEALS

(2) Docket or case number (if you know): 2015-01907

(3) Result: DENIED

(4) Date of result (if you know): SEPTEMBER 13, 2018

(5) Citation to the case (if you know): _____

(6) Grounds raised: PERJURY, NO PROBABLE CAUSE, RIGHT TO BE PRESENT, TAINTED IDENTIFICATION, DENIED TRANSCRIPTS.

(h) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐ No ☑

If yes, answer the following:

(1) Docket or case number (if you know): N/A

(2) Result: _N/A_

(3) Date of result (if you know): _N/A_

(4) Citation to the case (if you know): _N/A_

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

    Yes ☑  No ☐

11. If your answer to Question 10 was "Yes," give the following information:

  (a) (1) Name of court: _SUPREME COURT OF THE STATE OF N.Y APPELLATE DIVISION: SECOND DEPARTMENT_

      (2) Docket or case number (if you know): _A.D. # 15-01907_

      (3) Date of filing (if you know): _MARCH 6, 2015_

      (4) Nature of the proceeding: _NOTICE OF APPEAL / MOTION FOR POOR PERSON_

      (5) Grounds raised: _DEFENDANT WAS REPRESENTED BY ASSIGNED COUNSEL IN THE LOWER COURT AFTER DEFENDANT WAS UNABLE TO PAY FOR RETAINED COUNSEL._

      (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

        Yes ☑ No ☐

      (7) Result: _COURT GRANTED MOTION_

      (8) Date of result (if you know): _JANUARY 7, 2016_

  (b) If you filed any second petition, application, or motion, give the same information:

      (1) Name of court: _SUPREME COURT OF THE STATE OF N.Y. APPELLATE DIVISION: SECOND DEPT_

      (2) Docket or case number (if you know): _A.D # 2015-01907_

      (3) Date of filing (if you know): _FEBUARY 2, 2016_

      (4) Nature of the proceeding: _MOTION TO RELIEVE ASSIGNED COUNSEL AND ASSIGN NEW_

      (5) Grounds raised: _INEFFECTIVE ASSISTANCE OF COUNSEL FROM MS POVMAN DURING THE PROCEEDINGS._

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

Yes ☑ No ☐

(7) Result: __COURT GRANTED MOTION__

(8) Date of result (if you know): __APRIL 14, 2016__

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: __SUPREME COURT OF THE STATE OF N.Y APPELLATE DIVISION SECOND DEPT__

(2) Docket or case number (if you know): __AD #2015 - 01907__

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: __TO FILE PROSE BRIEF, AND TO GET TRANSCRIPTS__

(5) Grounds raised: __TO BE SPECIFICALLY PROVIDED WITH THE JANUARY 14, 2014 HEARING AND THE PRETRIAL CONFRENCE TRANSCRIPTS INCLUDING TRANSCRIPTS OF ANY PROCEEDINGS NECESSARY TO ARGUE MY SPEEDY TRIAL CLAIM.__

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

Yes ☐ No ☑

(7) Result: __COURT GRANTED MOTION__

(8) Date of result (if you know): __JANUARY 13, 2017__

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:     Yes ☐ No ☐

(2) Second petition:    Yes ☐ No ☐

(3) Third petition:     Yes ☐ No ☐

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not: _____

12.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE: MY CONVICTION WAS PROCURED BY PERJURED TESTIMONY, WHICH WAS KNOWN TO BE FALSE.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): SEE ATTACHED MEMORANDUM.

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____

(c)  Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ✓  No ☐

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☐  No ✓

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____
_____
_____

(3) Did you receive a hearing on your motion or petition?

Yes☐   No☐

(4) Did you appeal from the denial of your motion or petition?

Yes☐   No☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes☐   No☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____
_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

MY ASSIGNED APPELLATE COUNSEL AND I,
APPLIED FOR LEAVE IN THE COURT OF
APPEALS.

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: APPLIED FOR LEAVE IN THE COURT OF APPEALS.

GROUND TWO: THERE WAS NO PROBABLE CAUSE TO STOP SEARCH AND ARREST ME.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): SEE ATTACHED MEMORANDUM.
_____
_____
_____
_____
_____
_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____
_____
_____
_____

(c)  **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

      Yes ☑  No ☐

    (2) If you did not raise this issue in your direct appeal, explain why: _____
_____
_____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

      Yes ☐  No ☑

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____
_____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____
_____
_____

    (3) Did you receive a hearing on your motion or petition?

      Yes ☐  No ☐

    (4) Did you appeal from the denial of your motion or petition?

      Yes ☐  No ☐

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

      Yes ☐  No ☐

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: _____
_____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____
_____
_____

Page 9

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

MY APPELLATE LAWYER AND I, FILED FOR LEAVE IN THE COURT OF APPEALS

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: APPLIED FOR LEAVE IN THE COURT OF APPEALS.

**GROUND THREE:** RIGHT TO BE PRESENT AT A Full AND FAIR HEARING

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

(c)   **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ☑   No ☐

(2) If you did **not** raise this issue in your direct appeal, explain why: _____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
Yes ☐   No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☐  No ☐

(4) Did you appeal from the denial of your motion or petition?

Yes ☐  No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

MY APPELLATE COUNSEL AND I APPLEED FOR
LEAVE IN THE COURT OF APPEALS.

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: FILED FOR LEAVE
IN THE COURT OF APPEALS.

_____

**GROUND FOUR:** TAINTED IDENTIFICATION AND PROCEEDURE /
COURTS DECISION WAS NOT ADEQUATELY SUPPORT THE RECORD.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): SEE
ATTACHED MEMORANDUM.

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

    Yes ☑ No ☐

    (2) If you did **not** raise this issue in your direct appeal, explain why: _____

_____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

    Yes ☐ No ☑

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____

_____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

_____

    (3) Did you receive a hearing on your motion or petition?

    Yes ☐ No ☐

    (4) Did you appeal from the denial of your motion or petition?

    Yes ☐ No ☐

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☐ No ☐

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: _____

_____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available): _____

_____

Page 12

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

MY APPELLATE LAWYER AND I . APPLIED FOR
LEAVE IN THE COURT OF APPEALS

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: FLIED FOR LEAVE
IN THE COURT OF APPEALS.

13. Please answer these additional questions about the petition you are filing:

   (a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?   Yes ✓ No ☐

   If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

   (b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: N/A

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? Yes ☐ No ✓

   If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinions or orders, if available. _____

15. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?   Yes ☐ No ☑

   If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

   _____

   _____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

   (a) At preliminary hearing: LINDA POVMAN
   _____

   (b) At arraignment and plea: LINDA POVMAN
   _____

   (c) At trial: PRO SE
   _____

   (d) At sentencing: PRO SE
   _____

   (e) On appeal: RANDALL D UNGER 42-40 BELL BOULEVARD, SUITE 302 · BAYSIDE, NY 11361

   (f) In any post-conviction proceeding: RANDALL D UNGER 42-40 BELL BOULEVARD SUITE 302 BAYSIDE, NY 11361

   (g) On appeal from any ruling against you in a post-conviction proceeding: _____
   _____

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?   Yes ☐ No ☑

   (a)  If so, give name and location of court that imposed the other sentence you will serve in the future:
   _____

   _____

   (b) Give the date the other sentence was imposed: _____

   (c) Give the length of the other sentence: _____

   (d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?   Yes ☐ No ☐

Page 14

18. **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Page 15

Therefore, petitioner asks that the Court grant the following relief: _____

_____

_____

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on SEPTEMBER 5, 2019 _____ (month, date, year).

Executed (signed) on 9 | 5 | 2019 _____ (date).

*Raymond Ball*

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition. _____

_____

_____

Page 16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BAII RAYMOND

               Plaintiff

- v. -

ANGELENE STEVENSON Defendant(s)

**REQUEST TO PROCEED**
*IN FORMA PAUPERIS*

I, RAYMOND BAII                , am the plaintiff in the above entitled case.  I
hereby request to proceed without being required to prepay fees or costs or give security therefore. I state
that because of my poverty I am unable to pay the costs of said proceeding or to give security therefore, and
I believe I am entitled to redress.

1.  If you are presently employed:
    a) give the name and address of your employer
    b) state the amount of your earnings per month

2.  If you are **NOT PRESENTLY EMPLOYED:**
    a) state the date of start and termination of your last employment
    b) state your earnings per month
    **YOU MUST ANSWER THIS QUESTION EVEN IF YOU ARE INCARCERATED.**

    Ⓐ UNKNOWN   Ⓑ $32

3.  Have you received, within the past twelve months, any money from any source?  If so, name the source
and the amount of money you received.

    NO

    a) Are you receiving any public benefits?  ☑ No  ☐ Yes, $_____
    b) Do you receive any income from any other source?  ☑ No  ☐ Yes, $_____

4.  Do you have any money, including any money in a checking or savings account?  If so, how much?

    N/A

Page 17

Do you own any apartment, house or building, stocks, bonds, notes, automobiles or other property? If the answer is yes, describe the property and state its approximate value.

[✓] No    [ ] Yes, _____

6. List the person(s) that you pay money to support and the amount you pay each month.

_N/A_____

_____

7. Do you pay for rent or for a mortgage? If so, how much each month?

_N/A_____

8. State any special financial circumstances which the Court should consider.

I AM STILL PAYING OFF THE SURCHARGES
I INCURED DURING MY SENTENCING
IN 3/4/15.

I understand that the Court shall dismiss this case if I give a false answer to any questions in this declaration. In addition, if I give a false answer I will be subject to penalties for perjury.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: _____    Raymond Ball_____
                                                  (signature)

Rev. 7/2002

UNITED STATES DISTRICT COURT
         FOR THE
EASTERN DISTRICT OF NEW YORK   x
    RAYMOND Ball

                                    x

    -AGAINST-
ANGELENE STEVENSON              x


     ON SEPTEMBER 5/ 2019 RAYMOND Ball, FILED A
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 USCA
2254, THIS MEMORANDUM IS RESPECTFULLY SUBMITTED
IN SUPPORT OF PETITIONER'S MOTION THAT HE GRANTED
AN EVIDENTIARY HEARING ON SAID PETITION.


     Clearly, THIS COURT, EXERCISING IT'S SOUND
DISCRETION. MAY GRANT AN EVIDENTIARY HEARING
IN PROCEEDINGS BROUGHT PURSUANT TO 28 USCA 2254
AS long AS THE LEAGAL STANDARD IS MET. THE LEAGAl
STANDARD FOR DETERMINING THE SCOPE OF A
DISTRICT COURT'S DISCRETION TO HOLD AN EVIDENTARY
HEARING IN A HABEAS CORPUS CASE DEPENDS ON
WHETHER THE CASE IS SUBJECT TO THE ANTITERRORISM
AND EFFECTIVE DEATH PENALTY ACT (AEDPA) OF 1996. PUB.
L. NO. 104-132, 110 STAT. 1214 (1996). WHERE AEDPA
APPLIES, THE STANDARD IS ARTICULATED IN 28 USCA
2254(E)(2). IN PRE-AEDPA CASES, THE STANDARD WAS FIRST
SET FORTH IN TOWNSEND V SAIN 372 U.S 293 (OVERULED BY
KEENY V TAMAYO-REYES 504 US 1) SEE: KELLY V SECRETARY OF CORRECTION

377 F.3d 1317. PETITIONER CONTENDS THAT HE NEEDS AN EVIDENTIARY HEARING TO DEMONSTRATE THAT A DIFFERENT OUTCOME WOULD HAVE RESULTED DUE TO 1) CIRCUMSTANCES DESCRIBED BY P.O. PAMPENA TO PROCURE MY CONVICTION WAS FOSTERED ON PERJURED TESTIMONY. 2) THE SHOW UP IDENTIFICATION PROCEEDURE WAS TAINTED WHEN THE POLICE PREPED MR EL TURKEY ON THE ASPECTS OF MY GUILT, BEFORE THEY PRESENTED ME TO HIM FROM FAR AWAY. 3) PEOPLE FAILURE TO HAVE MR EL TURKEY TESTIFY AT THE WADE HEARING TO ESTABLISH IDENTIFICATION OR FAMILIARITY AND THE TRIAL COURT ERRED BY INVOKING CPL 60.25. MR EL TURKEY ALSO AFFIRMATIVELY TESTIFIED AT TRIAL THAT I WAS NOT THE PERSON WHO ROBBED HIM. 4) MY BEING DENIED THE RIGHT TO BE PRESENT AND CONFRONT P.O. PAMPENA AT THE JULY 14, 2014 COMBINED WADE, MAPP, DUNAWAY, HUNTLEY HEARING WAS VIOLATED ALONG WITH MY ~~EQUAL~~ EQUAL RIGHT AS AN INDIGENT TO BE PROVIDED FREE TRANSCRIPTS TO DEFEND AT TRIAL AND ON APPEAL. 5) THE USE AND COLLUSION OF PERJURED TESTIMONY BY MS POWMAN AND THE DISTRICT ATTORNEY TO PREVENT ME FROM RECEIVING A FAIR TRIAL. PETITIONER CAN SHOW THAT HE WAS PRECLUDED FROM DEVELOPING FACTUAL PREDICATES IN COLLATERAL PROCEEDINGS IN STATE COURT, IN THAT:

1) I REPRESENTED MYSELF AT TREAL, AND MY SOLE DEFENCE WAS THAT P.O. PAMPENA HAD COMMITTED PERJURY. THAT HE IN FACT WAS BROOKS ARRESTING OFFICER, AS HE HAD DESCRIBED WHEN FILLING OUT BROOKS FELONY COMPLAINT. HOWEVER P.O. PAMPENA ALSO DESCRIBED ARRESTING ME, WHEN HE FALSELY FILLED OUT MY FELONY COMPLAINT. I ARGUED THAT IT WOULD BE PHYSICALLY IMPOSSIBLE FOR P.O. PAMPENA TO HAVE BEEN ABLE TO ACCOMPLISH WHAT HE STATED HE DID IN BOTH FELONY COMPLAINTS. BECAUSE P.O. PAMPENA SWORE THAT HE NEVER CAME IN CONTACT WITH BROOKS OR DETECTIVE LANNING THAT NIGHT AT THE CRIME SCENE ON ACCOUNT OF CONDUCTING A CANVASS WHICH ENTAILED, MY BEING STOPPED WHILE RUNNING FROM THE CRIME SCENE, MY MAKING A STATEMENT, BEING HANDCUFFED, SEARCHED AND TRANSPORTED TO 105TH AND NORTHERN BOULEVARD FOR A SHOW UP. UPON OUR ARRIVAL AT THE CRIME SCENE AT 9:03 BROOKS WAS BEING TRANSPORTED TO 115TH PRCT - THE EMT WORKERS AND MR EI TURKEY, WHOM WAS INSIDE THE AMBULANCE BEING TREATED WERE THE ONLY ONES PRESENT. AT WHICH TIME P.O. PAMPENA GOT IN THE AMBULANCE AND CONDUCTED AN INVESTIGATION WHILE SITTING SHOULDER TO SHOULDER WITH MR. EI TURKEY, EMT ARIVED AT 9:11

P.O. PAMPENA AT THAT TIME SHOWED MR EL TURKEY THE I-PHONE, DID A SHOW UP OF ME, TOOK PICTURES, FILLED OUT AN AIDED REPORT AND CONDUCTED AN INVESTIGATION, AND OR THAT THE EVIDENCE TO BE ADDUCED AT AN EVIDENTIARY HEARING WOULD BE SUFFICIENT TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PETITIONER WOULD NOT HAVE BEEN FOUND GUILTY OF PL 160.10-1 ROBBERY IN THE SECOND DEGREE, PL 120.00-1 ASSAULT IN THE THIRD DEGREE, AND PL 165.40 CRIMINAL POSSESSION OF STOLEN PROPERTY IN THE FIFTH DEGREE, IN THAT BROOKS WAS TRANSPORTED AT 9:03 P.M TO THE 115TH PRECINCT AND IMMEDIATELY TAKEN TO BELVUE HOSPITAL FOR A PSYCHE EVALUATION. P.O. PAMPENA TESTIFIED IN BROOKS FELONY COMPLAINT "WHEN HE PLACED BROOKS IN THE CELL AT 115TH PRCT BROOKS STARTED SWINGING HIS ARMS, AND KICKING, THE SEARGENT WAS STANDING RIGHT NEXT TO HIM", P.O. PAMPENA ALSO FILED MY FELONY COMPLAINT. ONE OF THE FELONY COMPLAINTS WERE FALSE, WHICH IS MATERIAL TO THE VERACITY OF P.O. PAMPENA'S TESTIMONY AS A WHOLE.

DETECTIVE LANNING TESTIFIED THAT P.O. PAMPENA HAD TO BE AT THE CRIME SCENE ALONG WITH HIM, BROOKS AND MR EL TURKEY

IN ORDER TO HAVE TAKEN CREDIT FOR BROOKS ARREST. DETECTIVE LANNING ALSO MADE CLEAR IN HIS TESTIMONY THAT NOT ONLY WAS P.O. PAMPENA PRESENT WITH HIM DURING BROOKS ARREST BUT THAT "AFTER HE PUT THE HANDCUFFS ON BROOKS, P.O. PAMPENA TOOK THE ARREST AT THAT TIME". THAT P.O. PAMPENA WAS BROOKS ARRESTING OFFICER IS CORROBERATED BY THE STATEMENTS HE MADE IN BROOKS FELONY COMPLAINT LIKEWISE DETECTIVE LANNING'S MEMO BOOK ENTRY CORROBORATES HIS TESTIMONY AS TO P.O. PAMPENA BEING PRESENT ALONG SIDE HIM AND MR EL TURKEY DURING BROOKS STOP, IDENTIFICATION AND ARREST. THE ABOVE FACTS ARE MATERIAL BECAUSE P.O. PAMPENA DID NOT TESTIFY TO AN ACTUAL ENCOUNTER WHICH WAS REAL AND OF SOME SUBSTANTIALITY, BUT TO ONE THAT WAS MERELY TRIFLING, IMAGINARY AND SPECULATIVE.

MR EL TURKEY ALSO TESTIFIED AS TO P.O. PAMPENA BEING PRESENT AT THE CRIME SCENE IN AN AMAZING DETAIL. SPECIFICALLY AT HOW FAST P.O. PAMPENA'S CAR SHOWED UP ALONG SIDE DETECTIVE LANNING'S CAR.

MORE IMPORTANTLY MR EL TURKEY TESTIFIED "THAT IT WAS P.O. PAMPENA WHO CAME TO DETECTIVE LANNINGS CAR, SO HE CAN GET OUT TO IDENTIFY BROOKS", THIS FACT IS MATERIAL TO THE "TIME" OF POLICE OFFICER PAMPENA'S ARRIVAL AT THE CRIME SCENE AND CORROBORATES THE EVIDENCE AND TESTIMONY OF THE WITNESSES, EXCEPT FOR P.O PAMPENA.

THE DISTRICT ATTORNEY IN HIS OPENNING STATEMENT ARGUED HOW HE INTENDED TO HAVE MR EL TURKEY TESTIFY ABOUT ME BEING THE PERPETRATOR WITH CERTAINTY, THAT HE IS GOING TO TELL YOU HOW WELL HE AND I KNEW ONE ANOTHER, BASED ON MANY, HUNDREDS OF ENCOUNTERS GOING BACK A LONG TIME, WEEKS MONTHS A YEAR. HOWEVER BECAUSE MR EL TURKEY DID NOT TESTIFY AT THE SUPPRESSION HEARINGS THE FOLLOWING FACTS WERE PROFFERED AT TRIAL. AFTER MR EL TURKEY AFFIRMATIVELY DENIED ME BEING THE PERPETRATOR AT TRIAL, THE PEOPLE ADMITTED P.O. PAMPENA'S TESTIMONY ABOUT MR EL TURKEY'S PRIOR SHOW UP IDENTIFICATION OF ME, BECAUSE MR EL TURKEY TESTIFIED THAT HE HAD NO RECOLLECTION OF THE INCIDENT AND HAD TROUBLE REMEMBERING THE "CO DEFENDANTS" FACE DUE TO THE PASSAGE OF TIME.

THE DISTRICT ATTORNEY ASSERTS THAT MR EL TURKEY'S INABILITY TO IDENTIFY BROOKS DUE TO THE PASSAGE OF TIME, TRIGGERED CPL 60.25 KNOWN TO ONE ANOTHER EXCEPTION FOR A THIRD PARTY TO TESTIFY ABOUT MY EARLIER SHOW UP IDENTIFICATION WAS WRONG IN LIEU OF THE PEOPLES FAILURE TO ESTABLISH AT AN EARLIER HEARING THAT THE PROTAGANIST WERE KNOWN TO ONE ANOTHER. TOO MR EL TURKEY KNEW HIS ASSAILANT VERY WELL AND THOUGH HE NEVER GAVE A PRIOR DESCRIPTION TO P.O. PAMPENA OTHER THAN THE ONE RECEIVED FROM 911. MR EL TURKEY TESTIFIED HOW THE POLICE TOLD HIM THAT THEY WERE GOING TO BRING THE GUY FROM FAR AWAY, THE GUY THEY CAUGHT WITH HIS PHONE, MONEY, WALLET AND TO JUST SAY YES OR NO WHEN THEY BRING HIM. ON THE SUBSEQUENT OCCASION THE CIRCUMSTANCES WAS NOT CONSISTANT WITH SUCH RIGHTS AS AN ACCUSED PERSON MAY DERIVE UNDER THE CONSTITUTION OF THIS STATE OR OF THE UNITED STATES. MR EL TURKEY EXPLAINED THAT THEY BROUGHT HIM A BLACKBERRY PHONE, THAT DID NOT BELONG TO HIM. IT WAS DURING THIS STAGE OF TRIAL THAT WE LEARNED FOR THE FIRST TIME THAT IN THE COURSE OF CONDUCTING A SHOW UP OF ME, P.O. PAMPENA LEAVES OFF TO DO ANOTHER CANVASS OF THE CRIME SCENE AREA AND FIND A WALLET AND SOCIAL SECURITY CARD ON THE SEWER GRATE.

IT WAS NOT UNTIL AFTER P.O. PAMPENA RETURNED FROM DOING HIS CANVASS THAT HE SHOWED MR EL TURKEY HIS E-PHONE. NOTE: CONSIDER THAT THE CRIME SCENE WAS SWOMPED WITH BLOOD, THE STRUGGLE THAT ENSUED, AND THE FACT THAT I WAS WEARING WHITE, MAKES IT IMPOSSIBLE FOR ME NOT TO HAVE CARRIED AWAY ANY TRACE EVIDENCE DURING TRIAL I WAS ABLE TO QUESTION MR EL TURKEY AT LENGTH ON HIS PRIOR DESCRIPTION OF THE HOMELESS PANHANDLING GAY MAN WHO DRESSES LIKE A WOMAN. MR EL TURKEY DESCRIBED THE INDIVIDUAL AS BEING 5'3" IN HEIGHT BETWEEN 200-300 POUNDS DREDS SHORT, WHICH DOES NOT DESCRIBE ME.

CONCEARNING THE POLICE OFFICERS PREPPING OF MR EL TURKEY PRIOR TO BRINGING ME FOR THE SHOW UP, EVEN THE JUDGE HAD DO ASK MR EL TURKEY "SO DID THE POLICE TELL YOU THEY CAUGHT THE GUY WITH YOUR PROPERTY BEFORE THEY BROUGHT HIM TO YOU? HE ANSWERED YES' WERE YOU INSIDE THE AMBULANCE? NO I WAS IN THE SAME PLACE WHERE I FIRST WAS, THE AMBULANCE WAS IN NORTHERN BOULEVARD. MR EL TURKEY FURTHER STATES THAT "IF THE POLICE TELL YOU THAT THEY CAUGHT THE GUY WITH YOUR PROPERTY, IT'S ONLY LOGIC THAT IT'S THE GUY."

THE JANUARY 8, 2014 HEARING WAS ADJURNED UNTIL JANUARY 14, 2014 FOR THE PRODUCTION OF SAID AIDED REPORT, AND DURING THAT TIME THE DEFENSE DECLINED TO REST UNTIL AFTER THE AIDED REPORT WAS PRODUCED OR AN AFFIRMATIVE ANSWER TO IT'S EXISTENCE. ON JANUARY 14, 2014 A SECRET HEARING WAS CONDUCTED, AT WHICH TIME THE DISTRICT ATTORNEY REPRESENTED P.O. PAMPENA'S TESTIMONY THAT "HE HAD NEVER TESTIFIED TO HAVING FILLED OUT AN AIDED REPORT", WHICH THE DISTRICT ATTORNEY KNEW WAS A LIE, BECAUSE AT TRIAL HE CHANGED IT TO "HE MISSPOKE". JUDGE HOLDER EXCEPTED THE DISTRICT ATTORNEY'S REPRESEN-TATION AND ONCE AGAIN DENIED THE HEARINGS TO DATE & WAS NEVER PROVIDED THOSE STATEMENTS OR THE TRANSCRIPTS, SO THAT I CAN DEFEND MYSELF AT TRIAL OR DURING MY DIRECT APPEAL. ON JANUARY 13, 2017 THE SUPREME COURT OF THE STATE OF NEW YORK APPELLATE DIVISION: SECOND JUDICIAL DEPARTMENT, GRANTED MY MOTION ORDERING THE PEOPLE TO TURN OVER SPECIFICALLY THE TRANSCRIPS OF THE JANUARY 14, 2014 HEARINGS, THE PRE-TRIAL CONFERENCE TRANSCRIPTS AND THOSE OF THE PROCEEDINGS. IN SHORT THE STATE COURTS OPINIONS AND DECISIONS WERE NOT ADEQUATELY SUPPORTED BY THE RECORD.

I WAS Also DENIED EFFECTIVE ASSISTANCE OF COUNSEL, DUE TO MS BOWMANS REFUSAL TO INVESTIGATE MY ALIBI WITNESSES, HER CONSTANT WAIVER OF MY PRESENCE AT THE PROCEEDINGS AND HER lACK OF INTREST IN MY DEFENCE. SHE KEPT TRYING TO GET ME TO COP-OUT DESPITE MY DECLARING INNOCENCE. THIS CAUSED A CONFLICT OF INTEREST BETWEEN US AND AT THE MAY 21, 2013 SUPPRESSION HEARING I, MOVED TO HAVE MS BOWMAN REPLACED BY NEW COUNSEL OR TO BE AllOWED TO GO PROSE BUT JUDGE WOLFE DENIED MY MOTION. ON JANUARY 8, 2014 THE HEARINGS WERE REOPENED AND I, RENEWED MY MOTION EMPHASIZING THAT IF MS BOWMAN WAS AllOWED TO REPRESENT ME DURING THE HEARINGS IT WOULD BE AGAINST MY CONSENT. SO THE JUDGE AllOWED ME TO ASK QUESTIONS IN MY OWN BEHALF. WHILE MOVING FORWARD P.O. PAMPENA REMAINED ADAMANT ABOUT TEllING HIS STORY OF APPREHENDING ME WHILE RUNNING FROM THE CRIME SCENE ECETRA, BUT THIS TIME P.O. PAMPENA TESTIFIED THAT HE FILLED OUT AN AIDED REPORT IN CONJUNCTION WITH HIS CONDUCTING A SHOW UP WHILE MR ELTURKEY WAS INSIDE THE AMBULANCE BEING TREATED.

So I request that the record be expanded to turn over the following discovery ① the transcripts of the January 14, 2014 hearing which is material to my ineffective assistance of counsel claim and the prior statements of P.O. Pampena for impeachment, and veracity. ② the pre-trial conference transcripts of the trial courts erroneous denial of my suppession motion, and to adjurned for my alibi witnesses to be contacted which is material to my right of process. ③ to be provided with the transcript of the proceedings which are material to my speedy trial claim. Due to my being kept in jail pending trial for eight hundred an fifty days, where only two motions was filed by the defense, and my motion to desmiss was never answered. I was prejudiced because the alibi witness had recently moved prior to trial. ④ the investigators report material to preparing my habeas corpus claim. ⑤ along with any prior convictions of Mr. El Turkey, material to impeachment, ⑥ as well as copies of the log book and or names of the detectives that logged me in at the 115th prct on July 3, 2012, which is material to my guilt or innocence.

THE AFFIDAVITS OF RAYMOND BALL, WHICH SUPPORT PETITIONER'S CONTENTIONS, ARE ATTACHED HERETO AND INCORPORATED HEREIN AS EXHIBITS.

EXHIBITS:

A: BROOKS AND BALL FELONY COMPLAINTS.

B: EMT REPORT AND DISPATCH RADIO RUN

C: PICTURES OF BLOOD AT CRIME SCENE AND PICTURES OF ME AT CENTRAL BOOKINGS.

D: SUPPRESSION HEARING DECISION ORDER

E: APPELLATE DIVISION DECISION ORDER TO TURN OVER TRANSCRIPTS AND A LIST OF TRANSCRIPTS THEY MADE AVAILABLE.

F: COPY OF MY PRO SE SUPPLEMENTAL BRIEF

G: JAIL TIME CERTIFICATE

BASED ON THE FOREGOING
ARGUMENTS AND AUTHORITIES, THIS
HONORABLE COURT IS RESPECTFULLY
URGED TO GRANT THE PETITIONER
AN EVIDENTIARY HEARING.


SEPTEMBER   5/2019
RAYMOND BALL - 15A1060
OTTISVILLE CORRECTIONAL FACILITY
P.O. BOX 8
OTTISVILLE, NEW YORK 10963

# EXHIBIT A

Case 1:19-cv-05319-ERK-LB Document 10 Filed 09/13/19 Page 31 of 110 PageID #: 31

v.

ELIJAH BROOKS (49Y)
DEFENDANT

POLICE OFFICER ANGELO PAMPENA OF 115TH PRECINCT, TAX REG#: [redacted]
BEING DULY SWORN, DEPOSES AND SAYS THAT ON OR ABOUT JULY 3 2012
BETWEEN 8:50PM AND 9:00PM, AT THE SW INTERSECTION OF 105 STREET AND
NORTHERN BOULEVARD, COUNTY OF QUEENS, STATE OF NEW YORK

THE DEFENDANT COMMITTED THE OFFENSES OF:
PL 160.10-1 ROBBERY IN THE SECOND DEGREE
PL 160.10-2A ROBBERY IN THE SECOND DEGREE
PL 120.00-1 ASSAULT IN THE THIRD DEGREE - DNA SAMPLE REQUIRED UPON
        CONVICTION
PL 165.40 CRIMINAL POSSESSION OF STOLEN PROPERTY IN THE FIFTH DEGREE
PL 195.05 OBSTRUCTING GOVERNMENTAL ADMINISTRATION IN THE SECOND DEGREE
PL 110/120.00-1 ATTEMPTED ASSAULT IN THE THIRD DEGREE

IN THAT THE DEFENDANT, ACTING IN CONCERT, DID:  FORCIBLY STEAL
PROPERTY AND WAS AIDED BY ANOTHER PERSON ACTUALLY PRESENT; FORCIBLY STEAL
PROPERTY AND IN THE COURSE OF COMMITTING THE CRIME OR OF IMMEDIATE
FLIGHT THEREFROM, HE OR ANOTHER PARTICIPANT IN THE CRIME DID CAUSE
PHYSICAL INJURY TO A PERSON WHO WAS NOT A PARTICIPANT IN THE CRIME;
WITH INTENT TO CAUSE PHYSICAL INJURY TO ANOTHER PERSON, CAUSE SUCH
INJURY TO SUCH PERSON OR A THIRD PERSON; KNOWINGLY POSSESS STOLEN
PROPERTY WITH INTENT TO BENEFIT HIMSELF OR A PERSON OTHER THAN THE OWNER
THEREOF, OR TO IMPEDE THE RECOVERY BY AN OWNER THEREOF; A PERSON IS
GUILTY OF OBSTRUCTING GOVERNMENTAL ADMINISTRATION WHEN HE INTENTIONALLY
OBSTRUCTS, IMPAIRS, OR PERVERTS THE ADMINISTRATION OF LAW OR OTHER
GOVERNMENTAL FUNCTION OR PREVENTS OR ATTEMPTS TO PREVENT A PUBLIC
SERVENT FROM PERFORMING AN OFFICIAL FUNCTION, BY MEANS OF
INTIMIDATION, PHYSICAL FORCE OR INTERFERENCE, OR BY MEANS OF ANY
INDEPENDENTLY UNLAWFUL ACT, OR BY MEANS OF INTERFERING, WHETHER OR NOT
PHYSICAL FORCE IS INVOLVED, WITH RADIO, TELEPHONE, TELEVISION OR OTHER
TELECOMMUNICATIONS SYSTEMS OWNED OR OPERATED BY THE STATE, OR A
COUNTY, CITY, TOWN, VILLAGE, FIRE DISTRICT OR EMERGENCY MEDICAL
SERVICE OR BY MEANS OF RELEASING A DANGEROUS ANIMAL UNDER
CIRCUMSTANCES EVINCING THE ACTOR'S INTENT THAT THE ANIMAL OBSTRUCT
GOVERNMENTAL ADMINISTRATION.; WITH INTENT TO CAUSE PHYSICAL INJURY TO
ANOTHER PERSON, DID ATTEMPT TO CAUSE PHYSICAL INJURY TO SUCH PERSON OR A
THIRD PERSON.

S2

DEPONENT STATES THAT HE IS INFORMED BY THE COMPLAINANT, THAT ON THE ABOVE MENTIONED DATE, TIME AND PLACE OF OCCURRENCE, THE DEFENDANT, ELIJAH BROOKS, AND APPREHENDED OTHER, RAYMOND BALL, ARREST NUMBER Q12638438, APPROACHED HIM.

DEPONENT IS FURTHER INFORMED BY THE COMPLAINANT THAT THE DEFENDANT PUNCHED AND KICKED THE COMPLAINANT IN THE FACE, AND SMACKED HIS HEAD ON THE PAVEMENT SEVERAL TIMES, WHILE THE APPREHENDED OTHER, WAS HOLDING HIS HANDS BEHIND HIS BACK.

DEPONENT IS FURTHER INFORMED BY THE COMPLAINANT THAT THE APPREHENDED OTHER TOOK HIS WALLET AND IPHONE FROM HIS POCKET.

DEPONENT IS FURTHER INFORMED BY THE COMPLAINANT THAT THE ABOVE MENTIONED ACTIONS OF THE DEFENDANT AND APPREHENDED OTHER CAUSED HIM A LACERATION ON THE SIDE OF HIS FOREHEAD, A LOOSE TOOTH, BLEEDING ON HIS HEAD AND FROM INSIDE HIS MOUTH, A SWOLLEN EYE, SCRATCHES ON HIS BACK, AND SUBSTANTIAL PAIN.

DEPONENT FURTHER STATES THAT HE RECOVERED A IPHONE FROM THE APPREHENDED OTHER, WHICH THE COMPLAINANT IDENTIFIED AS THE IPHONE STOLEN FROM HIM.

DEPONENT FURTHER STATES THAT HE RECOVERED $250 IN CASH FROM THE APPREHENDED OTHER'S POCKET, AND HE IS INFORMED BY THE COMPLAINANT THAT THERE WAS $250 IN THE ABOVE MENTIONED WALLET AT THE TIME WHEN IT WAS TAKEN.

DEPONENT FURTHER STATES THAT HE RECOVERED CREDIT CARDS AND A SOCIAL SECURITY CARD IN THE COMPLAINANT'S NAME FROM THE GROUND NEAR WHERE THE DEFENDANT AND APPREHENDED OTHER WERE APPREHENDED.

DEPONENT IS FURTHER INFORMED BY THE COMPLAINANT THAT HE IS THE LAWFUL OWNER OF THE ABOVE MENTIONED IPHONE, WALLET, AND CONTENTS OF SAID WALLET, AND THE DEFENDANT OR APPREHENDED OTHER DID NOT HAVE ANY PERMISSION OR AUTHORITY TO TAKE, USE, OR EXERCISE ANY CONTROL OVER SAID IPHONE, WALLET, OF CONTENTS IN SAID WALLET.

DEPONENT FURTHER STATES THAT WHEN HE PLACED THE DEFENDANT INTO THE CELL AT THE 115 POLICE PRECINCT, IN QUEENS COUNTY, AND UNCUFFED THE DEFENDANT, THE DEFENDANT STARTED SWINGING HIS ARMS, AND KICKING HIS FEET TOWARDS POLICE OFFICERS AND A POLICE SERGEANT WHO WERE RIGHT NEXT TO HIM.



THE PEOPLE OF THE STATE OF NEW YORK

V.

ELIJAH BROOKS (49Y)
    DEFENDANT

STATE OF NEW YORK
COUNTY OF QUEENS

POLICE OFFICER ANGELO PAMPENA OF 115TH PRECINCT, TAX REG#: ▉▉▉▉,
BEING DULY SWORN, DEPOSES AND SAYS THAT ON OR ABOUT JULY 3 2012
BETWEEN 8:50PM AND 9:00PM, AT THE SW INTERSECTION OF 105 STREET AND
NORTHERN BOULEVARD, COUNTY OF QUEENS, STATE OF NEW YORK

THE DEFENDANT COMMITTED THE OFFENSES OF:
PL 160.10-1 ROBBERY IN THE SECOND DEGREE
PL 160.10-2A ROBBERY IN THE SECOND DEGREE
PL 120.00-1 ASSAULT IN THE THIRD DEGREE - DNA SAMPLE REQUIRED UPON
        CONVICTION
PL 165.40 CRIMINAL POSSESSION OF STOLEN PROPERTY IN THE FIFTH DEGREE
PL 195.05 OBSTRUCTING GOVERNMENTAL ADMINISTRATION IN THE SECOND DEGREE
PL 110/120.00-1 ATTEMPTED ASSAULT IN THE THIRD DEGREE

IN THAT THE DEFENDANT, ACTING IN CONCERT, DID:  FORCIBLY STEAL
PROPERTY AND WAS AIDED BY ANOTHER PERSON ACTUALLY PRESENT;FORCIBLY STEAL
PROPERTY AND IN THE COURSE OF COMMITTING THE CRIME OR OF IMMEDIATE
FLIGHT THEREFROM HE OR ANOTHER PARTICIPANT IN THE CRIME DID CAUSE
PHYSICAL INJURY TO A PERSON WHO WAS NOT A PARTICIPANT IN THE CRIME;
WITH INTENT TO CAUSE PHYSICAL INJURY TO ANOTHER PERSON, CAUSE SUCH
INJURY TO SUCH PERSON OR A THIRD PERSON;KNOWINGLY POSSESS STOLEN
PROPERTY WITH INTENT TO BENEFIT HIMSELF OR A PERSON OTHER THAN THE OWNER
THEREOF, OR TO IMPEDE THE RECOVERY BY AN OWNER THEREOF;A PERSON IS
GUILTY OF OBSTRUCTING GOVERNMENTAL ADMINISTRATION WHEN HE INTENTIONALLY
OBSTRUCTS, IMPAIRS, OR PERVERTS THE ADMINISTRATION OF LAW OR OTHER
GOVERNMENTAL FUNCTION OR PREVENTS OR ATTEMPTS TO PREVENT A PUBLIC
SERVENT FROM PERFORMING AN OFFICIAL FUNCTION, BY MEANS OF
INTIMIDATION, PHYSICAL FORCE OR INTERFERENCE, OR BY MEANS OF ANY
INDEPENDENTLY UNLAWFUL ACT, OR BY MEANS OF INTERFERING, WHETHER OR NOT
PHYSICAL FORCE IS INVOLVED, WITH RADIO, TELEPHONE, TELEVISION OR OTHER
TELECOMMUNICATIONS SYSTEMS OWNED OR OPERATED BY THE STATE, OR A
COUNTY, CITY, TOWN, VILLAGE, FIRE DISTRICT OR EMERGENCY MEDICAL
SERVICE OR BY MEANS OF RELEASING A DANGEROUS ANIMAL UNDER
CIRCUMSTANCES EVINCING THE ACTOR'S INTENT THAT THE ANIMAL OBSTRUCT
GOVERNMENTAL ADMINISTRATION.;WITH INTENT TO CAUSE PHYSICAL INJURY TO
ANOTHER PERSON, DID ATTEMPT TO CAUSE PHYSICAL INJURY TO SUCH PERSON OR A
THIRD PERSON.

52

THAT ON THE ABOVE MENTIONED DATE, TIME, AND PLACE OF OCCURRENCE, THE DEFENDANT, ELIJAH BROOKS, AND APPREHENDED OTHER, RAYMOND BALL, ARREST NUMBER Q12638438, APPROACHED HIM.

DEPONENT IS FURTHER INFORMED BY THE COMPLAINANT THAT THE DEFENDANT PUNCHED AND KICKED THE COMPLAINANT IN THE FACE, AND SMACKED HIS HEAD ON THE PAVEMENT SEVERAL TIMES, WHILE THE APPREHENDED OTHER, WAS HOLDING HIS HANDS BEHIND HIS BACK.

DEPONENT IS FURTHER INFORMED BY THE COMPLAINANT THAT THE APPREHENDED OTHER TOOK HIS WALLET AND IPHONE FROM HIS POCKET.

DEPONENT IS FURTHER INFORMED BY THE COMPLAINANT THAT THE ABOVE MENTIONED ACTIONS OF THE DEFENDANT AND APPREHENDED OTHER CAUSED HIM A LACERATION ON THE SIDE OF HIS FOREHEAD, A LOOSE TOOTH, BLEEDING ON HIS HEAD AND FROM INSIDE HIS MOUTH, A SWOLLEN EYE, SCRATCHES ON HIS BACK, AND SUBSTANTIAL PAIN.

DEPONENT FURTHER STATES THAT HE RECOVERED A IPHONE FROM THE APPREHENDED OTHER, WHICH THE COMPLAINANT IDENTIFIED AS THE IPHONE STOLEN FROM HIM.

DEPONENT FURTHER STATES THAT HE RECOVERED $250 IN CASH FROM THE APPREHENDED OTHER'S POCKET, AND HE IS INFORMED BY THE COMPLAINANT THAT THERE WAS $250 IN THE ABOVE MENTIONED WALLET AT THE TIME WHEN IT WAS TAKEN.

DEPONENT FURTHER STATES THAT HE RECOVERED CREDIT CARDS AND A SOCIAL SECURITY CARD IN THE COMPLAINANT'S NAME FROM THE GROUND NEAR WHERE THE DEFENDANT AND APPREHENDED OTHER WERE APPREHENDED.

DEPONENT IS FURTHER INFORMED BY THE COMPLAINANT THAT HE IS THE LAWFUL OWNER OF THE ABOVE MENTIONED IPHONE, WALLET, AND CONTENTS OF SAID WALLET, AND THE DEFENDANT OR APPREHENDED OTHER DID NOT HAVE ANY PERMISSION OR AUTHORITY TO TAKE, USE, OR EXERCISE ANY CONTROL OVER SAID IPHONE, WALLET, OR CONTENTS IN SAID WALLET.

DEPONENT FURTHER STATES THAT WHEN HE PLACED THE DEFENDANT INTO THE CELL AT THE 115 POLICE PRECINCT, IN QUEENS COUNTY, AND UNCUFFED THE DEFENDANT, THE DEFENDANT STARTED SWINGING HIS ARMS, AND KICKING HIS FEET TOWARDS POLICE OFFICERS AND A POLICE SERGEANT WHO WERE RIGHT NEXT TO HIM.

Case 1:19-cv-05310-ERK-LB Document 1 Filed 09/12/19 Page 35 of 110 PageID #: 35

07/04/2012 3:22PM (GMT-04:00)

AFFE45210SH42491

BROOKS,ELIJAH Q12638443

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE
PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT
TO SECTION 210.45 OF THE PENAL LAW

7-4-12

DATE          SIGNATURE

SWORN TO BEFORE ME ON THE
DAY OF

DATE          SIGNATURE

Jul  4 2012 03:20pm  Fax:  P006/006

# EXHIBIT B

```
Date: 07/03/13   Call: 3682   PDComp: ......   ......   --- CALLER HAS NO PT MEDICAL INFO
Initial type: UNKNOW       Final type: UNKNOW
CRO:#8765 (AR00)   Disp:#0883 (QN1P)   Held ?: NO   Relay:   Segment: 4   Area: Q6   Atom: 110T
Location: 106 ST/NORTHERN BL ,QN
```

```
21:05:39   PDCOMP          (D34C) --REQ BUS TO LOC- (8765)
21:05:39   PDADR-NOTVER    (8765)106 ST/NORTHERN BL,QN
21:06:21   PDADR-VIEWED    (8765) AR00 F (8765)
21:06:29   ENTRY-INIT      (8765) INITIAL CALL ENTRY
21:06:32   ENTRY-AVOK      (8765) ADDRESS VERIFICATION COMPLETE
21:06:32   ADDR-CHANGED    (8765) 106 ST/NORTHERN BL ,QN
21:06:32   ENTRY           (8765) PDT
21:06:32   FINAL           (8765)ACK SENT TO PD  - JOB FIRST SENT TO RELAY
21:07:15   SUGG-UNITS1     (0883) %46A3 >46B3 %49F3 %46E3 .Dual %49C3
21:07:15   SUGG-UNITS2     (0883) >46V3 %50S3 %46Y3 %52X3 .Dual *46Z3
21:07:15   SUGG-UNITS3     (0883) %46A3 >46V3 >46B3 %49F3 %46E3 %50S3
21:07:15   ASSIGNED        (0883) 46A3 #1019 MEJIA EMT. JOSE STA 46 #2101 GONZALEZ EMT. ADI
                           STA-46 89
21:07:15   ETA-88          (0883) 46A3=211114 110T  110T
21:07:20  * DMSG-RECEIVED  (1019) 46A3
21:07:23  * ENROUTE        (1019) 46A3
21:11:27  * ONSCENE        (1019) 46A3
21:36:29  * GIVE-DISPO     (1019) 46A3 93 . REFUSED ALL
21:36:29  * 10-98          (1019) 46A3 , Automatic 98/GD while 88
21:36:29  * CLOSED
```

FIRE DEPARTMENT – CITY OF NEW YORK

I hereby certify pursuant to CPLR 2306 and 2307 that this document is a true and accurate copy of a Fire Department record kept in the regular course of Fire Department business.

Signature: _____ Date: 5.7.13

75799739

| 07 | 03 | 16 | 2107 | 2107 | 2111 | 10 | | | | | 2126 |

**Incident Address**

| 106 | ST | - | Northern | BL | | | | Apt Number | | Drivers Shield # | 1019 |
| 106 | ST | - | Northern | BL | | | | | | | 1019 |

Prior Treatment(s) / by whom | Police Agency | Shield # | Responded From: 104 St - Roosevelt | Tech / Documentation Shield # 2101

**Last Name** E L T U R K E Y  **First Name** T A R E K   ☒ Male ☐ Female   Weight (lb)

☐ Check this box if same as Incident Address   ☐ Check box if EMS or Police in Attendance or Homeless

Zip Code | Social Security Number

Age: 52  ☐ Days ☐ Months ☒ Years   Date of Birth   Home Phone Number   Emergency Contact / Emergency Contact Phone #

## Medical

**Elapsed Time** | Systolic BP / Diastolic | Pulse: | Respir: | Pain (0-10)
| 13 | | 2 | 9 | 1 | |

SPO2 | Temperature | GCB GCV GCM | GST

**Breathing**
Quality: ☒ Normal ☐ Labored ☐ Shallow ☐ Irregular
Lung Sounds: ☐ Clear ☐ Raise ☐ Wheeze ☐ Rhonchi ☐ Diminish ☐ Absent

**Mental Status** ☐ A ☐ V ☐ P ☐ U

SH800 (1 of 2), Rev 3.0, 0510   © 2010 Sansio

3682      75799337

**Narrative History: Key Admits/Onset Prachers/Safety/Reliable/Juvenile Ration Changes En Route/Hesitation?**

Plan:
☐ Asthma ☐ Chronic Renal Failure ☐ Cardiac ☐ Diabetes ☐ Frail / Debilitated ☐ Hypertension ☐ IV Drug Use ☐ Seizure Disorder ☐ Tracheostomy
☐ Amputee ☐ Cancer ☐ COPD ☐ CVA / Stroke ☐ Dialysis ☐ HIV / AIDS ☐ Incontinent ☐ Psychiatric Hx. ☐ Substance Abuse ☐ Other

Special Conditions: ☐ Bed Confined ☐ Non-Ambulatory ☐ Required Stretcher ☐ Valid DNR

Allergies: ☑ No known allergies

Medications: ☑ Unknown

Pt was robbed by group of males, unsure punched (R) eye
hematoma, L cheek - tooth loose - pain mild.
(R) Parietal region has laceration superficial and
swelling. While supine on ground held down
thrusting head on floor (tile?). Pt A+O×3. AAO×4
refuses medical attn. txt to hospital. he sts it his religious belief
"in my country we believe in god - whatever happens happens"
-advised risk of brain bleed". Friend & witness but - also
couldn't convince him. Refuses all. Signed to be left @ one p/u.

**Chief Complaint:** They Punch me and bang my head. I m ok.

**Presumptive Diagnosis:**

---

SH9001 (2 of 2); Rev 3G  0510    © 2010 Sansio    (Page 2)

# EXHIBIT C



# NY/NJ HIDTA
# MUGSHOT PROFILE

Photo Ref #:          29000043



| | |
|---|---|
| NAME: | **BALL, RAYMOND** |
| AKA: | |
| SSN: | **0** |
| SID#: | **05414978K** |
| FBI#: | **50057EA2** |
| USMS#: | |
| DOB: | **11-14-1965** |
| SEX: | **MALE** |
| RACE: | **BLACK** |
| HEIGHT: | **509** |
| WEIGHT: | **160** |
| HAIR COLOR: | **BLACK** |
| HAIR LENGTH: | **NORMAL** |
| EYE COLOR: | **BROWN** |
| SMT: | |
| ADDRESS: | **32-26 106 STREET** |
| | **QUEENS, NEW YORK** |
| | **0** |
| PHONE: | |
| ARREST#: | **Q2012638438** |
| ARREST DATE: | **07-03-2012** |
| AGENCY: | **NYPD** |
| CHARGE CODE: | **PL 1601001** |
| CHARGE DESC: | **ROBBERY** |



HIDTA          CONFIDENTIAL FOR LAW ENFORCEMENT USE ONLY          10/19/2012



56

# EXHIBIT D

SUPREME COURT: STATE OF NEW YORK
COUNTY OF QUEENS: CRIMINAL TERM PART K20

PEOPLE OF THE STATE OF NEW YORK

        -against-

RAYMOND BALL,

         :   Indictment No.:02228/12

         :   DECISION/ORDER

        January 14, 2014

HOLLIE, RONALD D., Justice

    This court conducted a hearing on  May 21, 2013,  pursuant to *Dunaway v. New York, 442 U.S. 200* and *United States v. Wade, 388 U.S. 218,* and rendered a decision which denied the defendant's motion to suppress.  The co defendant by motion sought a new hearing for the court to consider discovery material, specifically the EMS Report, which was provided to the defense by the People subsequent to the hearing. The codefendant's motion for a new hearing was deemed to be a motion to vacate the decision of this court dated May 22, 2013 and by order dated October 7, 2013 the court granted the motion to reopen the hearing for the introduction of the EMS Report.

    On 1/4/14 the re-opened hearing was concluded and the defendant's motion to suppress pursuant to *Dunaway  v. New York, 442 U.S. 200*  and *United States v. Wade, 388 U.S. 218,* was again denied

                  RONALD D. HOLLIE  J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS: PART K-20
-------------------------------------------------------------------x
**THE PEOPLE OF THE STATE OF NEW YORK**

**Indict.2228-2012**

**AFFIRMATION**

  -against-

**RAYMOND BALL**

   Defendant
-------------------------------------------------------------------x
STATE OF NEW YORK)
COUNTY OF QUEENS ) ss.:

   **LINDA S. POVMAN,** an attorney duly admitted to practice law in the State of

New York, affirms under penalty of perjury as follows:

   1. I am the attorney for the above named defendant.

   2. That on February 20, 2014 the defendant appeared in Part Tap A.

   3. That on that date the defendant, Raymond Ball, was served with a copy of

this court's decision dated January 14, 2014 wherein the court on the reopened hearing

concerning the introduction of a EMS report denied the defendant motion to suppress.

A copy of the decision is annexed hereto as Exhibit A.

   4. That the defendant is seeking to reopen the hearing once again to make

inquiry concerning the failure of the arresting officer to prepare an aided report.

   5. That on February 20, 2014 the defendant made an oral request of Justice

Kron for the relief requested and advised counsel to file the application.

   Wherefore the defendant respectfully requests that this court reopen the

suppression hearing previously conducted to allow the defendant to inquire of the

arresting officer concerning his failure to prepare an aided report and such other and

# EXHIBIT E

**Appellate Division**
**Supreme Court of the State of New York**
**Second Judicial Department**
**45 Monroe Place**
**Brooklyn, N.Y. 11201**
**(718) 875-1300**

MEL E. HARRIS
KAREN HOCHBERG TOMMER
MARIA T. FASULO
DEPUTY CLERKS

RANDALL T. ENG
PRESIDING JUSTICE

APRILANNE AGOSTINO
CLERK OF THE COURT

DARRELL M. JOSEPH
KENNETH BAND
ASSOCIATE DEPUTY CLERKS

January 24, 2017

Raymond Ball, 15A1060
Mid- State Correctional Facility
P.O. Box 2500
Marcy, N.Y. 13403

Re:   People v Ball, Raymond
      App. Div. Docket No.: 2015-01907, Queens County Ind. No. 2228/12

Dear Sir:

By decision and order dated January 13, 2017, your motion for leave to file a pro se supplemental brief and to be furnished with typewritten transcripts of any proceedings has been granted. A copy of the order is enclosed.

Nine copies of the *pro se* supplemental brief must be filed in this court on or before **April 25, 2017.** One additional copy must be served on the District Attorney.

Yours truly,

PRO SE CLERK

Enc.

cc:   District Attorney, Queens County
      Randall D. Unger, Esq.

# Supreme Court of the State of New York
# Appellate Division: Second Judicial Department

M224206
E/sl

JOHN M. LEVENTHAL, J.P.
SANDRA L. SGROI
HECTOR D. LASALLE
BETSY BARROS, JJ.

---

2015-01907

The People, etc., respondent,                    DECISION & ORDER ON MOTION
v Raymond Ball, appellant.

(Ind. No. 2228/12)

---

Motion by the appellant pro se for leave to serve and file a supplemental brief on an appeal from a judgment of the Supreme Court, Queens County, rendered March 4, 2015, and to be furnished with copies of the typewritten transcripts of the proceedings, if any.

Upon the papers filed in support of the motion and the papers filed in relation thereto, it is

ORDERED that the motion is granted; and it is further,

ORDERED that the District Attorney shall file the transcripts of the proceedings, if any, and the Clerk of this Court shall deliver those transcripts to the person in charge of the institution wherein the appellant is incarcerated for examination by the appellant; the transcripts shall be returned to this Court when the appellant files the supplemental brief or informs this Court that no supplemental brief will be filed; and it is further,

ORDERED that the appellant shall file nine copies of the supplemental brief and serve one copy on the District Attorney.

Upon delivering the transcripts to the institution, the Clerk of this Court shall advise the appellant of the date by which the transcripts are to be returned and the supplemental brief filed.

LEVENTHAL, J.P., SGROI, LASALLE and BARROS, JJ., concur.

ENTER:

Aprilanne Agostino
Clerk of the Court

January 13, 2017

PEOPLE v BALL, RAYMOND



**Appellate Division**
**Supreme Court of the State of New York**
**Second Judicial Department**
**45 Monroe Place**
**Brooklyn, N.Y. 11201**
**(718) 875-1300**

RANDALL T. ENG
PRESIDING JUSTICE

APRILANNE AGOSTINO
CLERK OF THE COURT

MEL E. HARRIS
KAREN HOCHBERG TOMMER
MARIA T. FASULO
DEPUTY CLERKS

DARRELL M. JOSEPH
KENNETH BAND
ASSOCIATE DEPUTY CLERKS

January 24, 2017

*15A/060*

Mid-State Correctional Facility
Inmate Records Coördinator
9005 Old River road
Marcy, NY  13403-0216

Re:   People v Ball, Raymond
       App. Div. Docket No.: 2015-01907, Queens County Ind. No. 2228/12 94/15

Dear Sir:

Forwarded herewith are the following minutes for your use in the preparation of his *pro se* supplemental brief:

| Hearing | 5/21/13 | pp. | 1 - 67 |
|---------|---------|-----|--------|
| Hearing | 1/8/14 | pp. | 1 - 53 |
| Jury Trial | 1/20, 21, 22, 23, 26, 28, 29, 30,  2015 | pp. | 1 - 735 |
| Sentence | 3/4/15 | pp. | 1 - 26 |

Nine copies of the *pro se* supplemental brief must be filed in this court on or before **April 25, 2017.**   One additional copy must be served on the District Attorney.

If at this time you no longer wish to file the supplemental brief, you should send a signed letter to the court indicating that you no longer wish to file.

Very truly yours,
PRO SE CLERK

Encl.
Received By: _____

_____            _____
        Location                              Date

cc:   District Attorney, Queens County
       Randall D. Unger, Esq.

# EXHIBIT F

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK
RESPONDENT

A.D. NO 2015-01907

- AGAINST -

IND. NO 2228/2012

QUEENS COUNTY

RAYMOND BALL,

DEFENDANT-APPELLANT

SUPPLEMENTAl BRIEF

FOR DEFENDANT-APPEllANT

RAYMOND BAll

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : SECOND DEPARTMENT

THE PEOPLE OF THE STATE OF NEW YORK
                              RESPONDENT,

        - AGAINST -

RAYMOND BRII,
              DEFENDANT-APPELLANT,

## PRELIMINARY STATEMENT

THIS IS A SUPPLEMENTAL BRIEF FROM A JUDGMENT RENDERED MARCH 4, 2015, BY THE SUPREME COURT, QUEENS COUNTY, CONVICTING APPELLANT OF PENAL LAW 160.10(1) AND PENAL LAW 160.10(2)(A) ASSULT IN THE THIRD DEGREE IN VIOLATION OF PENAL LAW 120.00(1) AND CRIMINAL POSSESSION OF STOLEN PROPERTY IN THE FITH DEGREE IN VIOLATION OF PENAL LAW 165.40 AND SENTENCING HIM TO CONCURRENT DETERMINATE TERMS OF EMPRISONMENT OF 10 YEARS FOR THE ROBBERY COUNTS AND DEFINITE TERMS OF IMPRISONMENT OF ONE YEAR FOR THE ASSULT AND STOLEN PROPERTY COUNT (BARRY A. SCHWARTZ J, AT TRIAL AND SENTENCING).

2

# STATEMENT OF FACTS

## THE SUPPRESSION HEARING

P.O. DANIEL LANNING ASSIGNED TO THE 115TH Pct WAS IN PLAIN CLOTHES ON PATROLE IN AN UNMARKED VEHICLE ON THE NIGHT OF JULY 3, 2012 AT ABOUT 9:00 P.M HE RECEIVED A RADIO CALL OF A MALE BEING ROBBED AT KNIFE POINT ON THE CORNER OF 105 STREET AND NORTHERN BOULEVARD BY THREE BLACK MALES, ONE OF WHOM WAS WEARING A WHITE SHIRT AND BLACK PANTS. WHEN P.O. LANNING PROCEEDED TO THAT LOCATION HE OBSERVED A MAN NAMED ELTURKEY WHO WAS BLEEDING FROM HIS HEAD AND MOUTH AND LOOKED AS IF HE HAD BEEN BEATEN UP. ELTURKEY TOLD P.O. LANNING THAT "HE HAD BEEN ROBBED AND THEY WERE GONE" (TRI 373 - TRI 374)

NUMERICAL REFERENCES PRECEDED BY "AB" ARE TO THE MINUTES OF THE SUPPRESSION HEARING CONDUCTED ON MAY 21, 2013. THOSE PRECEDED BY "BA" ARE TO THE MINUTES OF THE REOPENED SUPPRESSION HEARING CONDUCTED ON JANUARY 8, 2014. THOSE PRECEDED BY "TRI" ARE TO THE MINUTE OF THE TRIAL. THOSE PRECEDED BY "S" ARE TO THE MINUTES OF SENENCING. THOSE PRECEDED BY "NMA" ARE TO THOSE MINUTES NOT MADE AVAILABLE AFTER BY COURT ORDER OF APPELLATE DIVISION SECOND DEPARTMENT DATED JANUARY 13, 2017.

3

(A) EL TURKEY NEVER DESCRIBED THE ITEMS STOLEN FROM HIM TO P.O. LANNING.

(B) HOW THE ATTACK OCCURED.

(C) DESCRIPTION OF THE PERPETRATORS. "NO WE JUST ASKED HIM TO GET IN THE VEHICLE RIGHT AWAY" (AB12, AB18-AB20, AB5-AB7). DURING THE BRIEF CONVERSATION BETWEEN EL TURKEY AND P.O. LANNING WHICH LASTED ONLY SECONDS, THE ONLY WORDS P.O. LANNING RECALLS THAT EL TURKEY SAID IN HIS PRESENCE IS "I WAS ROBBED" AND "THEY WENT THAT WAY" POINTING SOUTHBOUND.

(D) NOT THE NUMBER OF MALES INVOLVED.

(E) NOTHING ABOUT A KNIFE.

(F) NOTHING (EMPHASIS ADDED) (AB7, AB9, AB12, AB18-AB19)

P.O. LANNING HAD EL TURKEY SIT IN THE BACKSEAT OF HIS CAR AND THEN DROVE SOUTHBOUN ON 105 STREET, AND WITHIN SECONDS, P.O. LANNING OBSERVED TWO SUSPECTS ONE WHO LATER WAS IDENTIFIED AS ELIJAH BROOKS, WHOM WAS WEARING A WHITE SHIRT AND BLACK PANTS,

4

ALSO A BASEBALL CAP. EL TURKEY POINTED AT BROOKS AND STATED "THATS THE GUY THERE" P.O. LANNING THEN EXITED HIS CAR AND STOPPED BOTH MEN (BA27 - BA28). THE TOTAL TIME THAT ELAPSED BETWEEN WHEN P.O. LANNING CAME IN CONTACT WITH EL TURKEY, STOPPED THE TWO SUSPECTS AND PUT THE HANDCUFFS ON BROOKS WAS BRIEFLY TWO MINUTES. P.O. LANNING STATED AS TO BROOKS ARREST "IT WAS NOT TAKEN BY MYSELF" "BUT THE ARREST WAS TAKEN BY P.O. PAMPENA AT THE TIME" P.O. LANNING REMAINED ON THE SCENE AFTER BROOKS WAS TRANSPORTED AWAY (BA20, BA26 - BA28). AT THIS POINT THE RECORD IS CLEAR THAT P.O. PAMPENA IS BROOKS ARRESTING OFFICER.

(G) FROM THE FELONY COMPLAINT P.O. PAMPENA FILED, DATED JULY 4, 2012 WHICH STATES "DEPONENT FURTHER STATES THAT WHEN HE PLACED THE DEFENDANT IN THE CELL AT 115 Pct IN QUEENS COUNTY AND UNCUFFED THE DEFENDANT, THE DEFENDANT STARTED SWINGING HIS ARMS AND KICKING HIS FEET TOWARDS POLICE OFFICER AND A POLICE SERGEANT WHO WAS RIGHT NEXT TO HIM".

5

(H) P.O. LANNING WROTE IN HIS MEMO BOOK THAT THE TWO INDIVIDUALS WERE STOPPED BY P.O. PAMPENA.

(I) P.O. PAMPENA ACCORDING TO THE SPRINT REPORT WAS THE FIRST RESPONDER TO THE CRIME SCENE, 9:03 P.M.

(J) P.O. LANNING STATED "HE WAS NOT BROOKS ARRESTING OFFICER, BUT HE DID SPEAK BRIEFLY WITH MR EL TURLEY" (BA15-BA16).

P.O. PAMPENA ON JULY 3, 2012 WAS ALSO ASSIGNED TO 115 Pct, HE WAS IN UNIFORM ON PATROLE IN AN UNMARKED CAR, AT 9:00 P.M., WHEN HE HEARD A RADIO CALL ABOUT A KNIFE POINT ROBBER IN PROGRESS ON 105 STREET AND NORTHERN BOULEVARD, DESCRIBING THREE BLACK MALES ONE WEARING A WHITE SHIRT, BLACK PANTS (AB 23, AB 25). P.O. PAMPENA DID NOT RECALL THE RADIO CALL:

(A) DESCRIBING THREE BLACK MALES, JUST BLACK MALES, NOT THE NUMBER (AB 25, AB 35-AB 36, AB 56).

(B) INDICATING A KNIFE POINT ROBBERY

© WHETHER IT STATED THE AGE, WEIGHT OR HEIGHT OF SUSPECTS (AB 37).

Ⓓ FAILED TO WRITE ANYTHING DOWN (AB 35 - AB 37).

P.O. PAMPENA FIRST HEARD THE CALL AT 9:00 P.M, WHEN HE WAS ON 108 STREET AND ASTORIA BOULEVARD, THE ROUTE HE TOOK IS UNCLEAR, HOWEVER HE FIRST OBSERVED APPELLANT RUNNING DOWN THE STREET ALONE WITH AN I-PHONE IN HIS HAND NORTHBOUND ON 105 STREET AWAY FROM NORTHERN BOULEVARD. P.O. PAMPENA IMMEDIATELY STOPPED HIS CAR IN THE MIDDLE OF THE STREET ON 105 STREET AND 32ND AVENUE WHEN HE GOT OUT THE SITUATION WAS NOT VOLATILE:

Ⓔ NO GUNS WERE DRAWN.

Ⓕ APPELLANT WAS NOT TACKLED.

Ⓖ P.O. PAMPENA DID NOT SAY ANYTHING, NOT "STOP POLICE" NOR DID HE MAKE ANY INQUIRY (AB 24 - AB 25, BA 32 - BA 33, BB 35 - AB 36, AB 40 - AB 41).

APPELLANT STOPPED RIGHT IN FRONT OF P.O. PAMPENA AND SAID "I GOT (BROUGHT) THIS PHONE FROM 105 STREET AND NORTHERN BOULEVARD.

HOWEVER P.O. PAMPENA DID NOT RECALL WHAT IF ANYTHING WAS HIS RESPONSE, AFTER APPELLANT MADE THIS STATEMENT. P.O. PAMPENA JUST SNATCHED THE PHONE, HANDCUFFED AND SEARCHED APPELLANT, NO KNIFE WAS RECOVERED. AlLEDGEDlY $250.00 U.S. CURENCY WAS RECOVERED FROM APPELLANTS FRONT POCKET (AB40-AB42). P.O. PAMPENA'S OBSERVATION OF APPELLANTS PHYSICAL CONDITION NOTES HIS CLOTHES WERE DISHEVELED. HOWEVER P.O. PAMPENA WAS UNABLE TO RECALL WHETHER APPELLANT HAD ON HIM ANY:

- (H) CUTS
- (I) BRUISES
- (J) BlOOD

(AB42-AB43).

P.O. PAMPENA NEVER SAW APPELLANT ON 104 STREET AND 32ND AVENUE WHERE THE SPRINT REPORT INDICATES HE WAS STOPPED AT 9:06 P.M. NOTE: P.O. PAMPENA ARRIVED AT THE CRIME SCENE AT 9:03 P.M. AND HE STOPPED APPELLANT BEFORE GOING TO 105 STREET AND NORTHERN BOULEVARD AND P.O. PAMPENA NEVER SAW ELIJAH BROOKS ON 105 STREET AND NORTHERN BOULEVARD BECAUSE APPELLANT WAS BROUGHT TO THE CRIME SCENE BY P.O. PAMPENA AS BROOKS WAS BEING TRANSPORTED AWAY (AB29-AB30, AB32-AB

8

34, AB38-AB39, AB44). P.O. PAMPENA ARRIVED AT THE CRIME SCENE WITH APPELLANT AT 9:03 P.M. WHERE HE FIRST OBSERVED MR EL TURKEY BEING TREATED BY EMS, HE WAS ALREADY SITTING IN THE BACK OF THE AMBULANCE ON THE CORNER OF 105 STREET AND NORTHERN BOULEVARD. NOTE; ACCORDING TO THE EMS SPRINT REPORT THE TRUCK ARRIVED ON 106 STREET AND NORTHERN BOULEVARD AT 9:11 P.M. (AB29, AB44-AB48, BA33-BA48). P.O. PAMPENA'S FIRST OBSERVATION OF MR EL TURKEY'S PHYSICAL CONDITION WAS THAT EL TURKEY HAD A SWOLLEN BLACK EYE AND A LACERATION TO THE HEAD. EL TURKEY LOOKED LIKE HE JUST GOT BEAT UP, JUMPED, MUGGED, HIS CLOTHES WAS DISHEVELED, COVERED IN BLOOD AND RIPPED-UP. AT THAT TIME P.O. PAMPENA HAD A CONVERSATION WITH EL TURKEY WHILE SITTING SHOULDER TO SHOULDER AS EL TURKEY WAS BEING TREATED, EL TURKEY STATED:

(A) HE WAS BEAT UP AND ROBBED BY TWO MALE BLACKS ONE BIG, ONE SMALL, OUTSIDE THE CHECK CASHING PLACE ON 106 STREET AND NORTHERN BOULEVARD

(B) HE IDENTIFIED THE I-PHONE THROUGH A PASSWORD.

9

(M) HE DESCRIBED THE ATTACK.

(N) P.O. PAMPENA DID NOT TELL EL TURKEY THAT HE RECOVERED THE PROPERTY FROM THE APPELLANT (BA34, AB27-AB32, AB51-AB53, TRI 512-TRI 517). P.O. PAMPENA CONDUCTED A SHOW UP IDENTIFICATION AT THIS TIME OF APPELLANT WHO WAS HANDCUFFED, FLANKED BY A UNIFORM POLICE OFFICER STANDING NEXT TO A POLICE CAR, THREE CAR LENGTHS AWAY WITHOUT THE USE OF ANY FLASHLIGHT OR ILLUMINATION. THE ONLY THING EL TURKEY SAID WAS "THATS HIM" (AB27-AB32, AB46-AB48, AB51-AB53, BA33-BA36, BA47-BA48, TRI 512-TRI 517, TRI 553-560).

P.O. PAMPENA THEN FILLED OUT AN AIDED CARD, WHILE EL TURKEY REFUSES ALL MEDICAL ATTENTION AND GIVES A STATEMENT THAT HE WAS JUMPED BY A GROUP OF GUYS. THEN P.O. PAMPENA APPROA-CHED APPELLANT AFTER HIS CONVERSATION WITH EL TURKEY TO PLACE HIM BACK INTO THE POLICE CAR, AND APPELLANT WANTED TO KNOW WHAT HE WAS BEING CHARGED WITH. P.O. PAMPENA STATED ROBBERY AND IN RESPONSE APPELLANT SAID "IF THE GUY SAID IT'S HIS, THEN I GUESS IT WAS HIS" (AB33, AB49, BA36-BA38, BA40-BA43, BA49-BA52, TRI 428-TRI 430, TRI 640-TRI 643).

## HEARING COURT DECISIONS

ON DECEMBER 17, 2012 THE ATTORNEY FOR APPELLANT, LINDA POVMAN, SUBMITTED AN OMNIBUS MOTION TO PART TAP "A" FOR JUDGE CAMACHO, WHO RETURNED A DECISION/ORDER DATED DECEMBER 19, 2012 GRANTING APPELLANTS MOTION TO THE MAPP, HUNTLY, WADE, DUNAWAY HEARINGS. THEREAFTER ON MAY 21, 2013 THE HEARING WAS CONDUCTED AT PART K-20 BY JUDGE HOLLEE, AND AT THE CONCLUSION HE DENIED THE DUNAWAY/WADE PORTION OF THE HEARINGS. SUBSEQUENTLY APPELLANTS CO-DEFENDANT BY MOTION SOUGHT A NEW HEARING FOR THE COURT TO CONSIDER DISCOVERY MATERIAL, SPECIFICALLY THE EMS REPORT WHICH WAS PROVIDED TO THE DEFENSE BY THE PEOPLE SUBSEQUENT TO THE HEARING. THE CO DEFENDANTS MOTION FOR A NEW HEARING WAS DEEMED TO BE A MOTION TO VACATE THE DECISION OF THIS COURT DATED OCT 7, 2013. THE COURT GRANTED THE MOTION TO RE-OPEN THE HEARING FOR THE INTRODUCTION OF THE EMS REPORT. DURING THE COURSE OF THAT HEARING ON JAN 8, 2014, IT WAS DISCOVERED THAT P.O. PAMPENA HAD FILLED OUT AN AIDED REPORT THAT WAS NEVER TURNED IN TO THE DEFENSE AS ROSARIO MATERIAL (AB1, AB61-AB64,

11

BA36 - BA52). LINDA POWMAN, ATTORNEY FOR APPELLANT REFUSED TO REST ON THE RECORD SUBJECT TO THE PRODUCTION OF THE AIDED CARD, TO WHIT JUDGE HOLILE ORDERED THE PEOPLE TO TURN OVER BY THE ADJURNED DATE OF JAN 14, 2014 (BA 36-BA38, BA49-BA52). ON JAN 14, 2014 JUDGE HOLILE RENDERS A DECISION/ORDER STATEING: THE REOPENED HEARING WAS CONCLUDED AND THE DEFENDANTS MOTION TO SUPPRESS PURSUANT TO DUNAWAY/WADE WAS AGAIN DENIED. THEN ON FEBUARY 20, 2014 APPELLANT APPEARED IN FRONT OF JUDGE KRON PART TAP-A, AT WHICH TIME APPELLANT ARGUED VIGOROUSLY IN AN ORAL ARGUMENT FOR PERMISSION TO SUBMITT A PROSE MOTION FOR RELIEF TO-RE-OPEN THE HEARINGS ONCE AGAIN FOR THE PRODUCTION OF THE AIDED CARD, AND TO CROSS EXAMINE P.O. PAMPENA. JUDGE KRON ADVISED LINDA POWMAN TO FILE THE APPICATION, WHICH SHE DID SUBMITT (N.M.A TRANS). ULTIMATELY ON MARCH 24, 2014 JUDGE HOLL RENDERED A DECISION/ORDER STATEING: "THE APPELLANTS MOTION TO RE-OPEN THE HEARING FOR A SECOND TIME IS DENIED THE HEARING WAS RE-OPENED ON JAN 4, 2014 UPON THE MOTION OF THE CO DEFENDANT

12

FOR THE COURT TO CONSIDER THE EMS REPORT WHICH WAS PROVIDED SUBSEQUENT TO THE INITIAL HEARING. A DECISION WAS RENDERED ON JAN 14, 2014 DENYING THE MOTION TO SUPPRESS. THE DEFENDANT HAS FAILED TO SET FORTH NEWLY DISCOVERED EVIDENCE WHICH WOULD WARRANT THE RE OPENING OF THE SUPPRESSION HEARING (N.M.A. TRANS).

① NO HEARING WAS EVER RE-OPENED ON JAN 4, 2014 (N.M.A. TRANS).

② THE ADJURNED DATE JAN 14, 2014 SET FROM JAN 8, 2014 HEARING, NEVER TOOK PLACE FOR THE PRODUCTION OF THE AIDED CARD AND TO CROSS EXAMINE P.O. PAMPENA (BA36-BA52, N.M.A. TRANS).

③ ON JAN 14, 2014 APPELLANT WAS BROUGHT TO COURT AND PUT INTO THE HOLDING CELLS WHERE HE REMAINE ALL DAY UNTIL RETURNED TO RIKERS ISLAND (BA36-BA38, BA49-BA52).

④ ON JAN 4, 2014 APPELLANT WAS NEVER TRANSPORTED FROM RIKERS ISLAND TO COURT.

13

# THE TRIAL

## THE PEOPLE'S CASE

TEREK EL TURKEY A CAB DRIVER WHO WAS BORN IN EGYPT, SHARED A BASEMENT APARTMENT WITH A ROOMMATE ON 105 STREET BETWEEN NORTHERN BOULEVARD AND 32ND AVENUE IN OTLONA SECTION OF QUEENS. ON JULY 3, 2012 AT ABOUT 8:30 P.M. HE LEFT HIS APARTMENT TO PURCHASE A PACK OF CIGARETTS. FIRST HE WALKED TO AN ATM MACHINE IN A CHECK CASHING STORE AT THE CORNER OF 106 STREET AND NORTHERN BOULEVARD AND WITHDREW $260.00 IN CASH. HE THEN WALKED ONE BLOCK TO A DELI LOCATED ON THE CORNER OF 105 STREET AND NORTHERN BOULEVARD WHICH HE FREQUENTED TO PURCHASE THE CIGARETTS. OUTSIDE THE DELI WAS A GROUP OF INDIVIDUALS AS WELL AS ON THE ADJACENT CORNER THEY LOOKED LIKE A UNIFORM "ALL OF THEM WORE WHITE T-SHIRTS AND DARK JEANS". ONE OF THOSE INDIVIDUALS WAS A HOMELESS BLACK MAN WHOM EL TURKEY HAD SEEN BEGGING IN THE AREA MANY TIMES PREVIOUSLY EL TURKEY "WOULD GIVE HIM A DOLLAR OR COFFEE OR SOMETHING"

14

THREE OR FOUR TIMES OVER THE COURSE OF MONTHS (TRL 345 - TRL 347, TRL 359, TRL 398, TRL 405). HOWEVER WHEN ASKED IF THAT MAN IS IN THE COURTROOM, EL TURKEY REPLIED "HE IS NOT HERE" (TRL 336 - TRL 346, TRL 392 - TRL 393). AFTER EL TURKEY PURCHASED A PACK OF CIGARETTS IN THE DELI, HE LEFT THE STORE, LIT A CIGARETTE AND PHONED SOMEONE AS HE WALKED ALONG 105 STREET TOWARDS 34TH AVENUE. THOUGH HE HAD TESTIFIED BEFORE THE GRAND JURY THAT "HE BECAME AWARE THAT TWO BLACK MEN STARTED FOLLOWING HIM" AT THAT TIME, HE INSISTED THAT HE WAS FOLLOWED BY ONE BLACK MAN WHO HE DESCRIBED AS WEIGHING BETWEEN 250 AND 300 POUNDS, AND WEARING A WHITE SHIRT AND DARK JEANS. AS HIS APPREHENSION GREW EL TURKEY WALKED INTO THE STREET TO GO BACK IN THE DIRECTION OF THE DELI. AFTERWARDS HE HEARD THE MAN WHOM WAS FOLLOWING HIM TELL SOMEONE TO PUNCH HIM, THE MAN THEN PUSHED HIM TO THE GROUND BETWEEN TWO PARKED CARS. HE OBSERVED THAT THE HOMELESS MAN WHOM HE HAD SEEN EARLIER WAS BEHIND HIM ON THE GROUND. WHILE THE HEAVYSET MAN THEN SLAMMED AND PUNCHED HIM IN THE FACE, THE HOMELESS MAN RIPPED HIS PANTS POCKETS AND

15

REMOVED HIS CELL PHONE AND WALLET WHICH
CONTAINED $250 IN CASH (TRI 347 -TRI 368).
THE HEAVYSET MAN THEN SLAMMED HIS HEAD
AGAINST THE CURB TWO OR THREE TIMES, CURSED
HIM AND THREATENED TO KILL HIM. AS A RESULT
EL TURKEY'S EYE BECAME SWOLLEN, ONE HIS TEETH
WAS LOOSEND AND HE FELT PAIN IN HIS FACE (TRI
347 -TRI 370, TRI 393 -TRI 402). WHEN THE ATTACK
ENDED, EL TURKEY OBSERVED THE HEAVYSET MAN
PROCEED UP 105 STREET TOWARDS 34TH AVENUE.
HOWEVER HE DID NOT OBSERVE WHERE THE
HOMELESS MAN WENT. AFTER ABOUT A MINUTE,
HE STOOD UP AND WENT BACK INSIDE THE
DELI AND TOLD THE MANAGER THAT HE HAD BEEN
MUGGED AND ASKED HIM TO CALL THE POLICE.
WHILE INSIDE THE DELI THE HEAVYSET MAN
RETURNED TO THE FRONT OF THE DELI AND
THREATENED AND CURSED AT EL TURKEY AGAIN.
EL TURKEY CLAIMED HE RECOGNIZED THIS MAN
BECAUSE HE WAS WEARING THE SAME CLOTHING
THAT HE WORE DURING THE ROBBERY A RED
SHIRT AND BLACK PANTS (TRI 370 -TRI 372, TRI
402 -TRI 409). ABOUT 15 SECONDS LATER EL
TURKEY EXITED THE DELI AND HE APPROACHED
TWO PLAIN CLOTHES POLICE OFFICERS IN AN
UNMARKED CAR. HE GOT IN THE CAR AND
RODE WITH THOSE OFFICERS FOR ABOUT

16

60 TO 80 FEET, WHEN HE OBSERVED THE HEAVYSET MAN AND ANOTHER TALLER MAN IN THE STREET (TRI 372-TRI 377). EL TURKEY EXITED THE CAR AND IDENTIFIED THE HEAVYSET MAN AS THE ONE WHO PUNCHED HIM, HOWEVER HE DID NOT IDENTIFY THAT MAN WHEN ASKED IF HE RECOGNIZED HIM IN THE COURTROOM (TRI 373-TRI 378, TRI 409-TRI 414). AFTER EL TURKEY IDENTIFIED THE INDIVIDUAL HE CLAIMED ROBBED HIM, THE PLAIN CLOTHES OFFICER PROCEEDED TO HANDCUFF THAT INDIVIDUAL WHOM WAS LATER IDENTIFIED AS APPELLANTS CO DEFENDANT. OF PARTICULAR NOTE HOWEVER, THE ARREST WAS TAKEN BY A UNIFORMED POLICE OFFICER AND ACCORDING TO THE PLAIN CLOTHES OFFICERS MEMO BOOK, PLUS HIS TESTIMONY AT THE SUPPRESSION HEARING THEN AT TRIAL WAS "I ONLY PUT THE HAND-CUFFS ON HIM" AND "THE ARREST WAS TAKEN HOWEVER BY P.O. PAMPENA AT THAT TIME" WHO ARRIVED ON 105 STREET AND STOPPED THE TWO INDIVIDUALS FIRST, HE HAD TO BE THERE TO FILL OUT THE FELONY COMPLAINT. THOUGH THE PLAIN CLOTHES POLICE OFFICER REMAINED AT THE CRIME SCENE FOR ANOTHER 15 MINUTES, HE WAS UNABLE TO TESTIFY TO THE EVENTS THAT UNFOLDED ONCE HE

PUT THE CUFFS ON APPELLANT'S CODEFENDANT
(AB8, AB14-AB21, BA15-BA16, BA20, BA24-BA
27, TRI 447, TRI 455-TRI 460, TRI 463-TRI 468
CONTRARY TO THE MEMO BOOK, FELONY COMPLAINT AND
P.O. LANNING'S TESTIMONY, P.O. PAMPENA INSIST
THAT AFTER RECEIVING A RADIO CALL AT 9:00
P.M. OF A KNIFE POINT ROBBERY ON 105 STREET
AND NORTHERN BOULEVARD BEING COMMITTED
BY THREE MALE BLACK SUSPECTS, ONE WEARING
A WHITE SHIRT AND BLACK PANTS, P.O. PAMPENA
CLAIMED HE PROCEEDED FROM THE VICINITY
OF 108 STREET AND ASTORIA BOULEVARD TRAVELING
ONE AVENUE UP AND THREE BLOCKS OVER. WHEN
P.O. PAMPENA APPROACHED 105 STREET AND 32ND
AVENUE HE OBSERVED APPELLANT RUNNING
DOWN 105 STREET NORTHBOUND AWAY FROM
NORTHERN BOULEVARD ALONE. APPELLANT FIT
THE DESCRIPTION MATCHING THAT GIVEN
OVER THE RADIO, OF A BLACK MALE WEARING
A WHITE SHIRT AND DARK PANTS CARRYING
AN I-PHONE. P.O. PAMPENA IMMEDIATELY
STOPPED HIS CAR AND GOT OUT, HE DID NOT
SAY "STOP POLICE" NO GUNS WERE DRAWN, NOR
WAS ANY PHYSICAL FORCE USED. THE SITUATION
WAS NOT VOLATILE, THE APPELLANT STOPPED
RIGHT IN FRONT OF P.O. PAMPENA'S CAR WHERE
HE WAS STANDING AND SAID "I JUST

BROUGHT THIS PHONE FROM 105 STREET AND NORTHERN." (AB40 - AB41, TRI 501 - TRI 507).

## APPELLANTS APPREHENSION

P.O. PAMPENA THEN SNATCHED THE L-PHONE FROM APPELLANTS HAND AND WITHOUT INQUIRY CUFFED AND SEARCHED APPELLANT AT WHICH TIME $250.00 U.S. CURRENCY WAS RECOVERED FROM HIS FRONT POCKET. OF PARTICULAR NOTE, THE RADIO CALL DID NOT STATE ANY ITEMS STOLEN FROM EL TURKEY AND NO KNIFE WAS RECOVERED. P.O. PAMPENA DID NOT RECALL THAT THE TRANSMISSION HAD INDICATED "THREE BLACK MALES" NOT THE NUMBER, NOR DID HE RECALL "KNIFE POINT" ROBBERY OR WHETHER THE RADIO CALL STATED THE AGE, WEIGHT, HEIGHT OF SUSPECTS OR WHETHER APPELLANT HAD ANY CUTS, BRUISES OR BLOOD ON HIM ANYWHERE (AB 23 - AB31, TRI 542 - TRI 570). FURTHERMORE ACCORDING TO P.O. PAMPENA'S TESTIMONY AT THE SUPPRESSION HEARINGS AND AT TRIAL, IS THAT APPELLANT WAS TRANSPORTED BY HIM FROM 105 STREET AND 32ND AVENUE, AFTER APPELLANT WAS HANDCUFFED AND SEARCHED. P.O. PAMPENA THEN CALLED IN THE STOP OF APPELLANT TO CENTRAL AT THAT TIME

19

THEN HE PROCEEDED TO TRANSPORT APPELLANT BACK TO THE CRIME SCENE ON 105 STREET AND NORTHERN BOULEVARD (AB25 - AB30, BA30 - BA52, TRI 51, TRI 513, TRI 551 - TRI 555). THE TOTAL TIME IT TOOK P.O. PAMPENA, AFTER STOPPING APPELLANT AT 9:00 P.M. AND BRINGING HIM BACK TO THE CRIME SCENE ON 105 STREET AND NORTHERN BOULEVARD, TOOK THREE MINUTES. P.O. LANNING'S TESTIMONY BOTH AT THE SUPPRESSION HEARINGS AND AT TRIAL, ALONG WITH HIS MEMO BOOK, CONFIRMS THAT P.O. PAMPENA WAS PRESENT ON 105 STREET AND NOTHERN BOULEVARD AT 9:03 P.M. YET THE SPRINT REPORT HAS APPELLANT ON 104 STREET AND 32ND AVENUE BEING STOPPED BY POLICE AT 9:06 P.M. AND APPELLANTS ARRIVAL AT THE CRIME SCENE AT 9:08 P.M. P.O. LANNING ALSO TESTIFIED THAT HE, P.O. PAMPENA AND BROOKS WERE PRESENT AT THE CRIME SCENE AT 9:03 P.M, HOWEVER THE APPELLANT WAS NOT (TRI 461 - TRI 482). P.O. PAMPENA INSIST THAT THE RECOLLECTION OF THE EVENTS ON THE NIGHT OF JULY 3, 2012 AS TESTIFIED TO BY P.O. LANNING, HIS MEMO BOOK, THE 911 SPRINT REPORT, MR EL TURKEY TRIAL TESTIMONY, THE EMS TECHNICIANS TRIAL TESTIMONY, HIS EMS REPORT

AND THE EMS RELAY SHEET WERE ALL
ALL WRONG. WHEN P.O. PAMPENA WAS ASKED
TO CLARIFY THE DESCREPENCIES IN THE
TIME, HIS RESPONSE WAS "I ARRIVED AT
THE CRIME SCENE AT 9:03 P.M. AND I HAD
STOPPED APPELLANT BEFORE I ARRIVED"
AND WHEN HE WAS ASKED, DID YOU CALL
IN THE STOP OF APPELLANT? HE ANSWERED
"YES" (AB 35 - AB 40, AB 56, BA 30 - BA 47, TRI 373
- TRI 379, TRI 455 - TRI 468, TRI 548 - TRI 570,
TRI 418 - TRI 427, TRI 644 - TRI 645). DESPITE
P.O. PAMPENA'S TESTIMONY THAT AT 9:03 P.M
UPON ARRIVING AT THE CRIME SCENE
APPELLANTS CO DEFENDANT WAS BEING TRANS-
PORTED AWAY, HE HOWEVER FILED A FELONY
COMPLAINT REPRESENTING HIMSELF AS BROOKS
ARRESTING OFFICER. THE COMPLAINT READS
IN PART: "DEPONENT FURTHER STATES THAT
WHEN HE PLACED THE DEFENDANT (BROOKS)
INTO THE CELL AT 115 Pct, IN QUEENS
COUNTY, AND UNCUFFED THE DEFENDANT,
THE DEFENDANT STARTED SWINGING HIS
ARMS AND KICKING HIS FEET TOWARDS
POLICE OFFICER AND A POLICE SERGEANT
WHO WERE RIGHT NEXT TO HIM (SEE
ELIJAH BROOKS FELONY COMPLAINT).

21

<u>DEFENCE</u>

<u>BROOKS ARREST</u>

ON JULY 3, 2012 AT 9:00 P.M, AFTER BEING
ROBBED EL TURKEY WENT INSIDE THE DELI ON
THE CORNER OF 105 STREET AND NORTHERN
BOULEVARD FOR 90 SECONDS BEFORE HE LOOKED
OUTSIDE THE DOOR AND SAW THE HEAVYSET GUY.
THEREAFTER EL TURKEY EXITED THE STORE
AND APPROACHED A BEIGE CHEVY PARKED AT
INTERSECTION OF 105 STREET AND NORTHERN
BOULEVARD GOING THE OPPOSSITE WAY, AND
CONFRONTED THE TWO POLICE OFFICERS
WHOM HE TOLD I WAS "MUGGED". EL TURKEY
WAS THEN TOLD TO JUMP IN THE CAR AND
AND THEY TRAVELED 60 TO 80 FEET WHEN
TWO GUYS WAS OBSERVED WALKING, ONE
OF WHOM PUNCHED EL TURKEY. THE TWO POLICE
OFFICERS WERE IN PLAIN CLOTHES ASSISTING EL TURKEY
WHEN THE SUSPECTS WERE SPOTTED, THEY STOPPED
AND EXITED THE VEHICLE WHERE EL TURKEY REMAINED
SITTING AS INSTRUCTED BY THEM. INSTINTANOUSLY
TWO OTHER POLICE OFFICERS ARRIVED WEARING
UNIFORMS IN AN UNMARKED CAR, ONE WHITE,
ONE HISPANICK, WHOM APPROACHED EL TURKEY
SITTING IN THE BACK OF THE OTHER POLICE
VEHICLE INQUEREING AS TO "WHAT HAPPENED?
EL TURKEY THEN EXITED THE VEHICLE PROMPTED
BY THE TWO UNIFORMED POLICE OFFICERS AT
WHICH TIME EL TURKEY IDENTIFIED

APPELLANTS CO DEFENDENT AS ONE OF THE ERPERTRATORS WHO ROBBED HIM. BROOKS WAS HANDCUFFED BY P.O. LANNING (PLAIN CLOTHES P.O.) AND THE ARREST OF BROOKS WAS TAKEN BY P.O. PAMPENA (UNIFORMED P.O.) AT THAT TIME (TRI 371 - TRI 376, TRI 413).

## SUPPRESSION HEARING INVESTIGATION/I.D.

## APPELLANTS ARREST

ADDRESSED DURING THE SUPPRESSION HEARING IS AS FOLLOWS: THE COURT: SO IN DESCRIBING WHAT IT IS THAT THE EL TURKEY SAID, IF YOU CAN REMEMBER, JUST USE THE WORDS THAT HE USED (EL TURKEY). P.O. PAMPENA RESPONDED, "HE STATED THE BIG BLACK GUY WITH THE SHAVED HEAD WAS THE ONE THAT STARTED ASSAULTING HIM WHEN HE CAME OUT OF THE CHECK CASHING PLACE. THE A SMALLER BLACK GUY WENT INTO HIS POCKETS AND TOOK HIS PHONE AND HIS WALLET". P.O. PAMPENA WAS UNABLE TO RECALL ANY OTHER INFORMATION PROVIDED HIM FROM EL TURKEY (AB51 - AB52). P.O. PAMPENA WAS ASKED SPECIFICALLY ABOUT THE PRIOR INVESTIGATION CONDUCTED WHILE INSIDE EMS TRUCK WITH EL TURKEY. NOW WHEN YOU WERE NEXT TO HIM, DID YOU HAVE ANY CONVERSATION REGARDING MR BALL?

23

PREVIOUSLY TO ME GETTING ON THERE HE DID GIVE 9-1-1 A DESCRIPTION OF THE PEOPLE THAT ROBBED HIM, PAMPENA SAID. THE COURT THEN ASKED "RIGHT BUT AS YOU ARE SITTING WITH HIM IN THE AMBULANCE AND IF HE IS LOOKING AT MR BALL, IS HE SAYING ANYTHING OTHER THAN THATS HIM? PAMPENA RESPONDS "NO", HE ~~SAID~~ JUST SAID THATS HIM (BA 47- BA 48). NOTE P.O. PAMPENA FILLED OUT AN AIDED REPORT AT THIS TIME (BA 26-BA 28).

TRIAl

PRIOR TO SHOW UP.

El TURKEY MAKES IT VERY CLEAR THAT HE WAS INFORMED BY POLICE THAT APPELLANT WAS IN FACT THE HOMELESS GUY THEY CAUGHT WITH HIS PROPERTY, PRIOR TO SHOW UP IDENTIFICATION AND THE APPELLANT BEING BROUGHT TO THE CRIME SCENE. El TURKEY EXPLAINS IN DETAIL: "THEY TOLD ME THEY THINK THEY CATCH THE GUY BECAUSE HE ASK ME HOW MUCH MONEY"? "I SAID, ~~YES $~~ $250 DOLLARS" THEY SAID THEY FIND $250 DOLLARS EXACTLY. THEY ASK ME "WHAT KIND OF PHONE? I-PHONE El TURKEY REPLIED. THEY SAID THEY FIND I-PHONE, THEY FIND SOCIAL SECURITY AND MY LICENSE, SO I'M NOT GOING TO SAY NOTHING (TRI 426).

24

THE JUDGE THEN ASKED EL TURKEY "DID THE COPS TELL YOU THEY CAUGHT THE GUY WITH YOUR CELL PHONE? HE RESPONDED "YES", THEY SAW HIM THROW SOMETHING IN THE FLOOR, THE PAPER, SOCIAL, THE LICENSE, EVEN BRING TO THE PRECINCT." (NOTE: EL TURKEY'S WALLET, LICENSE, SOCIAL SECURITY CARD WAS RECOVERED AT THE CRIME SCENE (TRI 572-TRI 574). THE APPELLANT ASKED EL TURKEY "OKAY, NOW YOU SAID HERE RIGHT, THAT YOU KNEW, THAT IT WAS THE HOMELESS GUY WHO ROBBED YOU, BECAUSE HE HAD YOUR MONEY AND YOUR I.D, IS THAT CORRECT? EL TURKEY EXPLAINS "NOT ME, THE POLICE KNOWS, WHEN THE POLICE FIND MY WALLET WITH SOMEONE (NOTE EL TURKEY'S (PROPERTY WAS FOUND IN SEWER GRATE AT CRIME SCENE TRI 572-TRI 574), SO IT'S LOGIC, IT'S HIM" (TRI 420). APPELLANT CONTINUES TO CROSS EXAMINE EL TURKEY "YOU ALSO SAID, YOU KNEW IT WAS HIM BECAUSE YOU ALREADY KNEW IT WAS HIM THAT HAD THE MONEY SO YOU KNOW"? EL TURKEY RESPONDS "I DIDN'T ARREST HIM TO FIND HE HAS THE MONEY" (TRI 425), APPELLANT ASKED EL TURKEY "I JUST NEED TO KNOW SPECIFICALLY WHETHER OR NOT YOU WERE INFORMED, THAT IS, IS THAT THE FACT THAT THE COPS CAUGHT HIM"? EL TURKEY SAID "YES, THEY SAY THEY GOT THE GUY" AND THAT THEY FOUND THE MONEY PROPERTY? THEY FOUND THE PROPERTY WITH HIM "YES" EL TURKEY REPLIED. (TRI 425-TRI 427)

25

## IN COURT IDENTIFICATION

ADA SHORT IN HIS OPENING STATEMENT AT TRIAL DECLARED THE FOLLOWING: HE (EL TURKEY) WENT BACK TO 105 STREET TO PICK UP COFFEE AND HAVE A CIGARETTE WITH HIS FRIEND. WHEN TEREK GOT THE CORNER OF 105 AND NORTHERN BOULEVARD, HE SAW AN ALL TO FAMILIAR FACE, THE DEFENDANT RAYMOND BALL. DURING THE TRIAL YOU WILL HEAR THAT HE IS A FIXTURE IN THE NIEGHBOURHOOD, YOU WILL ALMOST ALWAYS FIND HIM IN FRONT OF THAT DELI ON THAT CORNER. TEREK WILL TELL YOU HE HAS SEEN HIM A DOZENS, HUNDREDS OF TIME, CAN YOU HELP ME OUT GIVE ME SOMETHING, DOLLAR, $5. MOST OF THE TIME HE PAYS HIM NO MIND. SOME DAYS HE MAY THROW HIM A BUCK OR TWO TO BE RID OF HIM. ON THAT NIGHT TEREK DID NOT KNOW THAT RAYMOND BALL WAS NOT GOING TO TAKE NO FOR AN ANSWER. TEREK WENT INSIDE THE STORE AND HE HAD A COFFEE... HE COULD SEE THE FRONT OF THE DELI WAS CROWDED WITH PEOPLE THAT HE HAD NOT SEEN BEFORE AND ONE HE HAD RAYMOND BALL (TRI 321-322). DURING TRIAL THE MOST CRUCIAL PIECE OF EVIDENCE PRESENTED (ALBEIT FOR THE FIRST TIME) WAS EL TURKE KNOWING APPELLANT PRIOR TO ROBBERY.

26

El TURKEY WAS ASKED "BEFORE YOU WALKED INTO THE DELE DID YOU SEE ANYBODY THAT YOU HAD SEEN BEFORE? I SEEN ONE GUY HE SAID. "WHO WAS THAT GUY"? HE IS A BLACK GUY, HOMELESS, I ALWAYS GIVE HIM DOLLAR OR COFFEE OR SOMETHING, El TURKEY SAID. FOR HOW LONG HAVE YOU BEEN SEEING HIM THERE FOR, WEEKS, MONTHS, HOW LONG"? YEAH, MAYBE LIKE WEEKS, MONTHS AND A HALF, HE SAID. "WHAT WAS HE DOING"? HE WAS STANDING WITH A BUNCH OF GUYS (EIGHT GUYS WEARING WHITE LIKE UNIFORM TRI 405) El TURKEY SAID. WHAT DID HE DO TO YOU? HE WAS THE ONE BEHIND ME AND THE ONE HE TOOK THE MONEY AND THE PHONE HE SAID. "WHO DID THE POLICE OFFICERS BRING TO SHOW YOU"? HE BRING THE HOMELESS, El TURKEY SAID. "DID YOU RECOGNIZE THE PERSON"? HE BRING THE HOMELESS, El TURKEY SAID. I AM GOING TO ASK YOU TO TAKE A LOOK AROUND THE COURTROOM AND SEE IF YOU RECOGNIZE THE PERSON THAT YOU HAVE TALKED ABOUT JUST NOW"? HE IS NOT HERE, El TURKEY SAID. "LOOK AROUND THE WHOLE COURTROOM SIR, El TURKEY WAS INSTRUCTED. NO, NOT HERE HE SAID. (TRI 371 - TRI 385). ONCE AGAIN THERE WAS AN ATTEMPT TO GET El TURKEY TO CONFIRM THAT APPELLANT WAS IN FACT THE HOMELESS GUY. (NOTE: APPELLANT REPRESENTED HIMSELF THROUGHOUT THE TRIAL AND QUESTIONED El TURKEY DIRECTLY).

27

SO THE JUDGE INSTRUCTED EL TURKEY TO "SEE IF YOU SEE THE HOMELESS GUY". AND HE RESPONDED WITH CERTAINTY, NO I KNOW HIM VERY WELL, NO I KNOW HIM A LONG TIME (TRI 384 -TRI 385). ADA SHORT ASKED EL TURKEY, I JUST WANT TO BACK UP A LITTLE BIT, GOING BACK TO WHEN YOU WERE AT THE AMBULANCE, YOU SAID "THE POLICE OFFICERS BROUGHT SOMEBODY OVER TO YOU, A PERSON"? THE POLICE OFFICERS SHOWED YOU A PERSON"? EL TURKEY REPLIED IN THE NEGATIVE, "NOT THE AMBULANCE (AS TESTIFIED TO BY P.O. PAMPENA), OUTSIDE THE AMBULANCE (EMPHISISS ADDED), I WAS IN THE SAME SPOT DURING THE COURSE, THE UNDERCOVER ARREST THE GUY (BROOKS). ADA SHORT ASKED EL TURKEY "WAS THE AMBULANCE THERE AT THE TIME"? EL TURKEY RESPONDED, "BUT THE AMBULANCE" IN THE CORNER IN NORTHERN BOULEVARD. SO THE JUDGE ASK EL TURKEY "WHAT DID HE LOOK LIKE"? HE SAID SOMETIME HE ACTED LIKE A GAY, ACT LIKE A WOMEN SOMETIME, THIS IS THE HOMELESS GUY. "OKAY, DO YOU REMEMBER WHAT THE HOMELESS GUY WAS WEARING THE DAY HE ASSAULTED YOU"? "I GUESS JEANS AND WHITE SHIRT", EL TURKEY SAID (TRI 384 -TRI 386).

28

DURING APPELLANTS CROSS EXAMINATION OF EL TURKEY ASKED: "MY NEXT QUESTION IS THIS MR EL TURKEY, THE NIGHT OF THE CRIME THAT THIS TERRIBLE THING HAPPENED TO YOU, YOU KNOW IN THE GRAND JURY TESTIMONY YOU NEVER IDENTIFIED, I HAVE HERE, RIGHT, YOU WAS ASKED, OKAY, BY THE OFFICER THAT CAME TO THE CRIME SCENE, HOW DID THE PERSON LOOK"? DID THE POLICE ASK YOU WHAT THE PERSON WHO ASSAULTED YOU LOOK LIKE"? "DID HE ASK FOR A DESCRIPTION"? "YOU KNOW YOUR DESCRIPTION IS WHAT DO YOU CALL ONLY OF A BLACK GUY, GAY GUY, HOMELESS GUY"? EL TURKEY REPLIED, YEAH, BLACK GUY, SAME TALL LIKE ME. "HOW TALL ARE YOU"? "DO YOU KNOW HOW TALL YOU ARE"? YES, LIKE FIVE SIX, BUT HE IS MAYBE A LITTLE SHORTER (APPELLANT IS 5'9") TO ME AND CURL HAIR (APPELLANTS HAIR WAS CUT LOW TO THE SCALP). "CURL HAIR"? YEAH, LIKE ALWAYS BLACK GUYS HAIR. "CURL"? YES. "LIKE DREADLOCKS"? YES. "IS IT LIKE JAMAICA OR LIKE GIRL"? LIKE JAMAICAN BUT SHORT, SAME LIKE YOUR HAIR. THE JUDGE ASKED: "DO YOU MEAN LIKE TIGHT CURLS"? YES (NOTE APPELLANTS HAIR WAS CUT SHORT TO THE SCALP AT TRIAL). "YOU MENTIONED EARLIER THAT THE GUY IS GAY IS THAT CORRECT"? HE ACT GAY, I'M NOT. "DID YOU EVER SEE HIM DRESSED DIFFERENTLY THAN A MAN"? SOME-TIMES, YEAH SOMETIME HE DRESS LIKE A WOMA ? YES. HE SAID (TRT 417-TRT 421)

29

Alright, well my next question is this
Mr El Turkey, thank you; you are being very
helpful. You are welcome, I know your job;
El Turkey said (TRI 425-TRI 426). There
was no doubt in El Turkeys mind as to
who the appellant was at trial, when he
declared, similar hair like the lawyer
(emphasis added).

Conclusion:

P.O. Pampena gives an elaborate story of
how after receiving a radio call of a knife
point robbery at 9:00 P.M. on 105 street and
Northern Boulevard, spots appellant in
route who fits the description, and
carrying an I phone (being part and parcel
of crime had not yet been communicated).
At 9:00 P.M. P.O. Pampena apprehends
appellant, handcuffs, finds $250 during
the search then transports appellant
back to crime scene within three
minutes, arriving at 9:03 P.M. El Turkey
allegedly was already inside EMS
truck being treated. While inside
EMS truck P.O. Pampena conducts an
investigation and show up with El
Turkey of appellant, and fills out an aided
report at that time.

30

THE FOLLOWING EVIDENCE AND TESTIMONY
NOT ONLY PROVES P.O. PAMPENA FABRICATED
THE SHOW UP AND EVENTS, BUT THAT THEY TOO
WERE IMPOSSIBLE. P.O. LANNING'S MEMO
BOOK READS; "P.O. PAMPENA STOPED TWO
ENDIVIDUALS ON 105 STREET" ALSO P.O. LANNING
TESTIFIED "I ONLY PUT THE CUFFS ON BROOKS
PAMPENA TOOK THE ARREST AT THE TIME (TRI 8-
TRI 9, BA 27-BA 28). APPELLANT WHILE QUESTION-
ING P.O. LANNING DECLARED: HE DID YOUR
HONOR, PERTAINING TO THE ARREST (BROOKS)
THAT AN OFFICER HAS TO BE ON THE SCENE
IN ORDER FOR HIM TO TAKE CREDIT FOR
THE ARREST, IS THAT CORRECT? SO THAT
MEANS THAT OFFICER PAMPENA WAS ON
THE SCENE WHEN, MR. BROOKS WAS ARRESTED
IS THAT CORRECT? LANNING REPLIED IN
THE POSITIVE "HE WAS THERE". HE WAS
THERE ON THE SCENE? YEAH, HE SAID.
(TRI 462-463). ALSO EL TURKEY TESTIFIED
DURING QUESTIONING; "DID OTHER
POLICE OFFICERS ARRIVE AT THAT LOCATION
? YES HE SAID. "HOW SOON AFTER YOUR OFFICERS
GOT OUT OF THE CAR? MAYBE 20, 25 SECONDS. SO
QUICK, INSTANTANEOUS? YES HE SAID (TRI
412-TRI 413). THE JUDGE ASKED EL TURKEY:
NO WHEN DID YOU GET OUT OF THE POLICE
CAR? WHEN THE OTHER, THE UNIFORM
POLICE COMING, AND THEY ASKED ME WHAT
HAPPENED (TRI 376-TRI 378).

31

MR. EL TURKEY'S TESTIMONY OF THE ABOVE EVENTS READS AS FOLLOWS: "WHEN THE OTHER OFFICERS CAME DID THEY BRING ANYBODY WITH THEM? HE TOLD ME HE GOING TO BRING THE GUY, THEY FIND THE MONEY WITH HIM AND FROM FAR AWAY, AND I CAN RECOGNIZE HIM I SAY YES OR NO, SO HE BRING HIM LIKE THIS TABLE SO I TELL HIM YES, THIS GUY. OKAY. WHEN THE POLICE OFFICERS CAME, DID THEY SHOW YOU ANYTHING? HE SHOWED ME PHONES, EL TURKEY SAID. "WHAT DO YOU MEAN THEY SHOWED YOU PHONES? HE TOLD ME THIS YOUR PHONE, FIRST PHONE, I SAID NO, IT WAS NOT MINE, LIKE BLACKBERRY, OLD ONE, SO HE COME BACK WITH MY PHONE, HAS MY PICTURE AND EVERYTHING (TRI 379 - TRI 381). SO THEY BROUGHT THE HOMELESS GUY BACK TO THE SCENE OF THE CRIME. . . . ? NOT CLOSE FROM ME, EL TURKEY SAID. " I'M NOT ASKING? DON'T ARGUE; THE CRIME IS FROM FAR AWAY." OKAY. SO YOU KNOW HIM FROM FAR AWAY? YES, THEY BRING HIM NOT TOO CLOSE TO ME, NOT VERY CLOSE. THEY TOLD ME THEY GOING TO BRING HIM A LITTLE BIT AND RECOGNIZE HIM, SO BEFORE I KNOW HIM FROM FAR WAY (EMPHASIS ADDED), I SAID I KNOW IT'S THIS GUY. "YOU ALSO SAID YOU KNEW IT WAS HIM BECAUSE YOU ALREADY KNEW IT WAS HIM THAT HAD THE MONEY, SO YOU KNOW?

32

I DIDN'T ARREST HIM TO FIND HE HAS THE MONEY, SO HE IS THE ONE THAT HAS THE MONEY (EMPHASIS ADDED, TRI 425).

EL TURKEY GIVES CLEAR TESTIMONY THAT NOT ONLY WAS HE INFORMED BY POLICE THAT APPELLANT WAS CAUGHT WITH HIS PROPERTY BEFORE APPELLANT WAS BROUGHT TO THE CRIME SCENE FOR SHOW UP, AND THAT IT NEVER TOOK PLACE WHILE HE AND P.O. PAMPENA WAS INSIDE EMS TRUCK, BUT FROM FAR AWAY (TRI 572 - TRI 574). ALSO APPELLANT WAS IDENTIFIED FIRST, BY THE INFORMATION EL TURKEY RECEIVED FROM THE POLICE, THEN SHOWN EVIDENCE (BLACK BERRY PHONE NEVER TURNED IN) THEN LEFT OFF AND RETURNED WITH THE I PHONE AND OTHER PROPERTY RECOVERED FROM A SEWER GRATE AT THE CRIME SCENE WHILE APPELLANT WAS BEING IDENTIFIED. P.O. PAMPENA'S ACCOUNT OF THE EVENTS ON THE NIGHT OF JULY, 3, 2012 BECOMES IMPOSSIBLE WITH HIS TESTIMONY OF FILLING OUT AN AIDED CARD WHILE SITTING SHOULDER TO SHOULDER WITH EL TURKEY INSIDE EMS TRUCK DURING THE SHOW UP (BA 26 - BA 28). BECAUSE LIKE THE BLACKBERRY PHONE WAS NEVER TURNED IN BY POLICE. MR GONZALEZ EMS TECHNICIAN TESTIFIED (TRI 615 - TRI 646) THAT EMS TRUCK DID NOT ARRIVE UNTIL 9:11 P.M (SEE EMS RELAY SHEET TRI 645).

33

ANY DOUBT THAT P.O. PAMPENA AT 9:03 P.M.
ON JULY 3, 2012 WAS PRESENT ALONG WITH
ELIJAH BROOKS, P.O. CANNING AND MR EL TURKEY
IN THE CAPACITY OF BROOKS ARRESTING OFFICER
IS REMOVED BY THE FELLONY COMPAINT, P.O.
PAMPENA FILED TO WIT: DEPONENT; WHEN HE
PLACED DEFENDANT INTO THE CELL AT 115TH PCT...
(SEE BROOKS FELONY COMPLAINT). HOWEVER P.O.
PAMPENA IS DETERMINE TO DECEIVE EVERYONE
AS TO THE EVENTS OF JULY 3, 2012. APPELLANT
CONTINUES TO QUESTION P.O. PAMPENA: "NOW
WHEN YOU GOT ME BACK TO THE CRIME SCENE
DID YOU EVER TELL THE VICTIM THAT THE PERSON
WHO HAD HIS PROPERTY HAD ALREADY BEEN
ARRESTED? NO HE SAID. "YOU NEVER TOLD HIM
THAT"? NO, HE INSIST. "DID ANY OTHER POLICE
OFFICER TELL HIM THAT? NO (SEE PRIOR TO TRIAL
SHOW UP). MOREOVER P.O. PAMPENA WAS ASKED:
"YOU SAID THAT WHAT YOU CALL RECOVERED AN
IPHONE AND MONEY FROM ME; IS THAT CORRECT
? YES, HE SAID. "DID YOU RECOVER ANYTHING
ELSE FROM ME? NO, HE SAID. NOTHING ELSE?
NO. "ARE YOU SURE? YES HE SAID. "OKAY, WHEN
YOU GOT BACK TO THE CRIME SCENE AND YOU
EVENTUALLY, YOU SHOWED THE VICTIM, RIGHT, THE
PROPERTY YOU GOT OFF ME; IS THAT CORRECT"?
AFTER I ASKED HIM WHAT WAS TAKEN, YES:
"DID YOU EVER SHOW HIM A BLACK BERRY? NO, HE
SAID. OKAY, RIGHT DID YOU EVER SEE ANOTHER
SHOW HIM A BLACKBERRY? NO, HE SAID, I DID
NOT (TRT. 559 - TRT 560).

34

P.O. PAMPENA REFUSES TO CONCEDE TO P.O. LANNING AND EL TURKEY'S TESTIMONY, AND WHEN HE WAS ASKED: GREAT OFFICER PAMPENA, DO YOU UNDERSTAND THAT PERJURY IS A CRIME? RESPONDS ABSOLUTELY. APPELLANT ASKED P.O. PAMPENA; WE ARE READING FROM THE FIRST SUPPRESSION HEARING, MAY 21, 2013 REFERRING TO PAGE 29 LINE 24 ... OR 23 DOWN IT READS: AND YOU ALSO SAID THAT THERE WAS SOMEONE ELSE THERE, SOMEONE I THINK THAT YOU SAID WAS MR BROOKS. DID YOU ACTUALLY SEE MR BROOKS AT THE SCENE? AND YOUR RESPONSE WAS; NO, HE WAS ALREADY IN THE VEHICLE BEING TRANSPORTED AWAY AS I WAS ARRIVING AT THE SCENE. SO I WOULD LIKE TO ASK YOU, WHEN YOU ARRIVED AT 105 STREET AND NORTHERN BOULEVARD WITH ME IN TOW, TWO MINUTES AFTER NINE, MR BROOKS WAS BEING TRANSPORTED AWAY, ACCORDING TO YOUR TESTIMONY, OKAY IN THE VEHICLE ... AND I WOULD LIKE YOU TO HELP US WITH THIS, WHEN YOU ARRIVED AT THE CRIME SCENE TWO MINUTES AFTER, NO OTHER OFFICER WAS PRESENT; IS THAT CORRECT? PAMPENA RESPONDS "CORRECT". (TRI 566 - TRI 568, TRI 560). "POLICE OFFICER LANNING WASN'T THERE? CORRECT HE SAID (TRI 566 - TRI 568, TRI 560).

35

ALSO THE FIRST TIME GONZALEZ (EMS TECHNICIAN) CAME IN CONTACT WITH MR EL TURKEY WAS AT 9:21 P.M., AND AT 9:23 APPELLANT AND MR BROOKS WAS AT THE PRECINCT (TRI 541), AND WHEN P.O. PAMPENA WAS ASKED: " DID YOU EVER TAKE MR BROOKS TO THE PRECINCT AND PUT HIM IN THE CELL? HE RESPONDED. "NO". (TRI 579) TRI 576, SEE' BROOKS FELONY COMPLAINT.

36

# POINT ONE

AT THE SUPPRESSION HEARING THE
EVIDENCE PRESENTED BY THE PEOPLE FAILED TO
ESTABLISH THAT ON THE NIGHT OF JULY 3, 2012, P.O.
PAMPENA DID AFTER TO A RADIO CALL DESCRIBING
A ROBBERY IN PROGRESS OF THREE MALE BLACK
SUSPECTS, ONE WEARING A WHITE SHIRT AND
BLACK PANTS, STOPPED APPELLANT, HANDCUFFED,
SEARCHED AND THEN TRANSPORTED APPELLANT
TO THE LOCATION ON 105 STREET AND NORTHERN
BOULEVARD WHERE TEREK E (TURKEY IDENTIFIED
APPELLANT AS ONE OF THE PERPETRATORS, THOUGH
THE HEARING COURT CONCLUDED THAT THE
APPELLANTS ARREST WAS SUPPORTED BY
PROBABLE CAUSE, IT IS CLEAR THAT NO SUCH
PREDICATE EXISTED. DURRING THE JAN 8,
2014 HEARING APPELLANT PROVED THAT P.O.
PAMPENA'S TESTIMONY IN THIS CASE WAS
PERJURED (BA2). TOO DURING THE HEARING
IT WAS DISCOVERD THAT P.O. LANNING WAS
NOT (BROOKS) APPELLANTS CODEFENDANT'S
ARRESTING OFFICER, BUT HE DID "PLACE HIM
IN CUFFS" (BA15-BA16). P.O. LANNING'S
MEMO BOOK ALSO EVIDENCED "TWO MALES
WAS STOPPED P.O. PAMPENA ON 105 STREET."

37

P.O. LANNING TESTIFIED TO WHAT THAT
ENTRY MEANS IS "I STOPPED THEM IN THE
CORNER, BUT THE ARREST (BROOKS) WAS
TAKEN BY P.O. PAMPENA AT THAT TIME". THEN
E/TURKEY ALSO TESTIFIED TO P.O. PAMPENA BEING
PRESENT DURING BROOK ARREST AND IDENTI-
FICATION. E/TURKEY WAS ASKED BY THE JUDGE
"WHEN DID YOU GET OUT OF THE POLICE CAR"?
(TO I.D. BROOKS) HIS RESPONSE WAS "WHEN
THE OTHER, THE UNIFORMED POLICE COMMING
AND THEY ASKED ME WHAT HAPPENED"? (TRI
371 - TRI 376, TRI 413). ALSO WHEN P.O. PAMPENA
WAS ASKED "DID YOU EVER TAKE MR BROOKS TO
THE PRECINCT AND PUT HIM INTO THE CELL?
RESPONDED "NO". DESPITE FILLING OUT A FELONY
COMPLAINT REPRESENTING HIMSELF AS BROOK'S
ARRESTING OFFICER STATING JUST THAT. P.O.
PAMPENA SUBMITTED THIS WRITTEN INSTRUMEN
FOR WHICH AN OATH IS REQUIRED BY LAW, WAS
USED TO MISLEAD THE COURTS IN THE
PERFORMANCE OF HIS OFFICIAL FUNCTION IN
VEOLATION OF P.L. 210.10, 210.15 (TRI 576, TRI 57

38

DURING THE HEARING APPELLANT ASKED P.O. PAMPENA "DID YOU ARREST ME"? HE REPLIED "YES". ALSO WHEN THE JUDGE ASKED P.O. PAMPENA "AND AT THE TIME YOU ARRIVED AT 9:05 THAT THE AMBULANCE WAS ALREADY THERE"? CORRECT WAS HIS ANSWER. THEN WHEN BROOKS LAWYER ASKED P.O. PAMPENA "YOU PREVEOUSELY TESTIFIED AT THE HEARING THOUGH THAT MR BROOK'S WAS NO-- NOT AT THE SCENE WHEN YOU ARRIVED"? HE REPLIED AGAIN CORRECT, "I WAS STILL DOING THE CANVAS WHEN I CAME IN CONTACT WITH THE OTHER DEFENDANT, MR. BALL (BA45-BA46, AB29-AB30, AB44, AB52). HOWEVER IT WAS WHEN P.O. PAMPENA DURING THE SUPPRESSION HEARING FALSELY TESTIFIED, THAT "HE RETURNED WITH APPELLANT TO 105 STREET AND NORTHERN BOULEVARD, WHERE HE CONDUCTED A SHOW UP IDENTIFICATION OF APPELLANT TO EL TURKEY WHO WAS BEING TREATED, AND FILLED OUT AN AIDED CARD INSIDE BACK OF EMS TRUCK WHILE SITTING SHOULDER TO SHOULDER WITH EL TURKEY." THAT CAUSED JUDGE HOLLEE TO ORDER THE PEOPLE TO ON THE ADJURNED DATE OF JAN 14, 2014 TO TURN OVER AIDED CARD (ROSARIO MATERIAL) BA36-BA52).

39

FURTHERMORE LINDA POWMAN, ATTORNEY FOR APPELLANT REFUSED TO REST ON THE RECORD SUBJECT TO THE PRODUCTION OF THE AIDED CARD (BA 49), WHICH TO DATE WAS NEVER TURNED OVER TO DEFENCE. IN VIOLATION OF C.P.L. 240.44, 240.45; PEOPLE V ROSARIO 9 NY2D 286, PEOPLE V RANGHELLE 69 NY2D 56, PEOPLE V MARTINEZ 71 NY2D 937, (BA 52). THERE WAS NEVER AN AFFIRMATIVE ANSWER GIVEN TO THE DEFENCE AS TO WHETHER OR NOT IT DID OR DID NOT EXIST (BA 52). THE SUPPRESSION HEARING SCHEDULED FOR JAN 14, 2014 WAS TERMINATED, AND APPELLANT WAS DEPRIVED OF ONE FULL HEARING, PEOPLE V RICHETTI 302 NY 290, PEOPLE V LANGAN 303 NY 474, PEOPLE V BARTLAM 9 NY2D 550, PEOPLE V DAVIS 564 NYS2D 320, PEOPLE V GILES 73 NY2D 666, PEOPLE V PAYTON 51 NY2D 169, ON FEB 20, 2014 APPELLANT MOVED TO HAVE THE HEARING ONCE AGAIN RE-OPENED FOR THE PRODUCTION OF THE AIDED CARD (ROSARIO MATERIAL) AND TO CROSS EXAMINE P.O. PAMPENA, PEOPLE V HAVELKA 412 NYS2D 345. HOWEVER ON MARCH 24, 2014 JUDGE HOLLIE RENDERED A DECISION/ORDER DENYING THE MOTION FOR THE HEARING TO BE RE-OPENED FOR A SECOND TIME.

40

AT THE TERMINATION OF THE HEARING, JUDGE HOLLIE WITH NOTHING BEFORE HIM TO CAST DOUBT ON THE EXISTENCE OF THE AIDED CARD OR P.O. PAMPENA'S UNRELIABILITY NOR ON THE FALSE INFORMATION HE PURPORTEDLY CONVEYED, CONCLUDED THAT PROBABLE CAUSE HAD BEEN SHOWN FOR THE APPELLANTS ARREST AND DENIED THE MOTION TO SUPPRESS, IN CONSEQUENCE OF WHICH THE CHALLENGED EVIDENCE WAS RECEIVED AGAINST APPELLANT UPON THE ENSUING TRIAL.

IT HAS BEEN MADE UNMISTAKABLY CLEAR IN PEOPLE V ROSARIO 9 NY2D 286, THAT DEFENCE COUNSEL MUST BE PERMITTED TO EXAMINE A WITNESSES PRIOR STATEMENT, WHETHER OR NOT IT DIFFERS FROM HIS TESTIMONY ON THE STAND AND TO DECIDE FOR THEMSELVES THE USE TO BE MADE OF IT ON CROSS-EXAMINATION PROVIDED ONLY THAT THE STATEMENT "RELATES TO THE SUBJECT MATTER, OF THE WITNESS TESTIMONY AND CONTAINS NOTHING THAT MUST BE KEPT CONFIDENTIAL. AND OBVIOUSLY, IT MATTERS NOT WHETHER THE WITNESS IS TESTIFYING UPON A TRIAL OR AT A SUPPRESSION HEARING. IN EIGHTHER EVENT" A RIGHT SENSE OF JUSTICE ENTITLES THE DEFENCE TO ASCERTAIN WHAT THE WITNESS SAID ABOUT THE SUBJECT UNDER

41

CONSIDERATION ON AN EARLIER OCCASION. PEOPLE V MALENSKY 262 NYS 2D 65, PEOPLE V TURAINE 573 NYS 2D 64, PEOPLE V LUMPKIN 533 NYS 2D 792, PEOPLE V HOBART 266 NYS 2D 110, PEOPLE V SHAINUCK 286 NY 161, PEOPLE V PEREZ 490 NYS 2D 747, PEOPLE V ROSARIO 213 NYS 2D 448.

ON JAN 14, 2014 APPELLANT WAS TRANSPORTED FROM RIKERS ISLAND TO KEW GARDENS QUEENS SUPREME COURT AND PLACED IN A HOLDING CELL WHERE HE REMAINED ALL DAY UNTIL RETURNED TO RIKERS ISLAND. ACCORDING TO THE DECISION ORDER RENDERED BY JUDGE HOLTE DATED JAN 14, 2014 WHICH STATES: "ON 1/4/2014 THE RE-OPENED HEARING WAS CONCLUDED AND THE DEFENDANTS MOTION TO SUPPRESS PURSUANT TO DUNAWAY V NEW YORK 442 U.S. 200 AND UNITED STATES V WADE 388 U.S. 218 WAS AGAIN DENIED" ON JAN 4, 2014 APPELLANT WAS NOT EVEN TRANSPORTED FROM RIKERS ISLAND TO COURT ON THAT DAY. CONSEQUENTELY APPELLANT WAS DENIED HIS RIGHT TO BE PRESENT AT THE SUPPRESSION HEARING WHENEVER IT WAS CONCLUDED. IN VIOLATION OF APPELLANTS CONFRONTATIC AND DUE PROCESS CLAUSES OF THE FEDERAL

42.

AND STATE CONSTITUTION (SEE U.S. CONST 6TH, 14TH, AMENDS; N.Y. CONST, ART 1, § 6) BUT BY C.P.L. 260.20, WHICH PROVIDES THAT A DEFENDANT MUST BE PERSONALLY PRESENT DURRING THE TRIAL OF AN INDICTMENT" IN ADDITION "WHENEVER HIS PRESENCE HAS A RELATION REASONABLY SUBSTANTIAL, TO THE FULLNESS OF HIS OPPORTUNITY TO DEFEND AGAINST THE CHARGE" WHICH APPLIES TO BE PRESENT DURING A PRETRIAL SUPPRESSION HEARING, DURING WHICH WITNESSES ARE EXAMINED AND CROSS-EXAMINED. NOTING: " DEFENDANT ALONE MAY BE ABLE TO ENFORM HIS ATTORNEY OF INCONSISTENCIES, ERRORS AND TO CONFRONT OFFICER PAMBENA AS TO HIS FALSE TESTIMONY WHICH HAD A GREAT IMPACT ON APPELLANT GUILT OR INOCENSE, PEOPLE V VELASCI 77 NY2D 469, PEOPLE V SLOAN 79 NY2D 386, PEOPLE V DOKES 584 NYS2D 761, PEOPLE V MULLEN 44 NY2D 1, SNYDER V MASSACHUSETTS 291 U.S. 97, PEOPLE V CIACCIO 47 NY2D 431, PEOPLE V ANDERSON 16 NY2D 282, PEOPLE V TURAINE 79 NY2D 660, PEOPLE V THORN 156 NY 286, PEOPLE EX REI LUPO V FAY 13 NY2D 253, PEOPLE V ANDERSON 266 NYS2D 110, KENTUCKY V STINCER 482 U.S. 730.



TOO LINDA POWMAN ATTORNEY FOR APPELLANT WAS NOT PRESENT DURING THE AFOREMENTIONED SUPPRESSION HEARINGS DATED JAN 4, 2014 NOR ON JAN 14, 2014 IN VIOLATION OF APPELLANTS CONSTITUTIONAL AND STATUTORY RIGHTS, (NY. CONST, ART 1, § 6; U.S. CONST, CODE CREM PRO § 427), WHEN THE HEARING COURT ORDERED THAT THE SUPPRESSION HEARING PROCEED DESPITE THE FACT THAT THE APPELLANT'S ATTORNEY WAS NOT PRESENT IN THE COURTROOM. THE COURT ACTED IMPROVIDENTLY IN DENYING DEFENCE COUNSEL'S REQUEST TO RE-OPEN THE SUPPRESSION HEARING SO AS TO ENABLE HER TO CROSS EXAMINE P.O. PAMPENA WHO TESTIFIED IN HER ABSENCE. "LAWYERS IN CRIMINAL CASES ARE NECESSITIES NOT LUXURIES". THEIR PRESENCE IS ESSENTIAL BECAUSE THEY ARE THE MEANS THROUGH WHICH THE OTHER RIGHTS OF PERSONS ON TRIAL ARE SECURED. WITHOUT COUNSEL THE RIGHT TO A TRIAL ITSELF WOULD BE "OF LITTLE AVAIL". MOST OBVIOUS, OF COURSE IS THAT A TRIAL IS UNFAIR IF THE ACCUSED IS DENIED COUNSEL AT A CRITICAL STAGE OF HIS TRIAL. PEOPLE V ARMAS 483 NYS2D 121, U.S. V CRONIC 466 US, 648, HOLLOWAY V ARKANSAS 435 U.S. 475, UNITED STATES V WADE 388 U.S. 218, GILBERT

44

V CALIFONIA 388 U.S. 263, DUSKY V UNITED STATES 362 U.S. 402, UNITED STATES V HURT 543 F2D 162, PEOPLE V SPELLER 520 NYS2D 418, GIDEON V WAINWRIGHT 372 U.S. 335, ON JAN 14, 2014 THE SUPPRESSION HEARING WAS TERMINATED AND THE APPELLANT WAS DEPRIVED OF ONE FULL OPPORTUNITY TO PRESENT THAT P.O. PAMPENA HAD LIED ABOUT FILLING OUT AN AIDED CARD DURING THE SHOW UP IDENTIFICATION OF APPELLANT BY EL TURKEY WHILE INSIDE EMS TRUCK, PEOPLE V RICHETTI 302 N.Y. 290, PEOPLE V LANGAN 303 NY 474, PEOPLE V BARTLAM 9 NY2D 550, PEOPLE V DAVIS 564 NYS2D 320, PEOPLE V GILES 73 NY2D 666, PEOPLE V PAYTON 51 NY2D 169, AND IF AN ERROR OF LAW IS COMMITTED BY THE HEARING COURT WHICH DIRECTLY CAUSES THE PEOPLE TO FAIL TO OFFER POTENTIALLY CRITICAL EVIDENCE A REHEARING SHOULD BE ORDERED, SO THAT EVIDENCE MAY BE PRESENTED, PEOPLE V HAVELKA 45 NY2D 643, THE MISSING DOCUMENT IS RELEVENT TO P.O. PAMPENA'S DESCRIPTION OF EL TURKEY'S INJURIES HE GAVE ON DIRECT EXAMINATION AT THE HEARING AS NOTED ON THE AIDED CARD, PEOPLE V DEAN MORRIS 718 NYS2D 588.

45

ACCORDING TO P.O. PAMPENA'S TESTIMONY PERTAINING TO THE SHOW UP IDENTIFICATION AND EL TURKEY'S INJURIES HE OBSERVED WHILE FILLING OUT THE AIDED CARD WHILE INSIDE EMS TRUCK, REQUIRED APPELLANT TO HAVE AN OPPORTUNITY TO CONFRONT P.O. PAMPENA AFTER THE ORDER WAS GIVEN BY JUDGE HOLLIE TO TURN OVER THE AIDED CARD OR GIVE AN AFFIRMATIVE ANSWER TO IT'S EXISTENCE (BA49-BA52). ESPECIALLY AS HERE WHERE APPELLANT CONTENDS THAT P.O. PAMPENA IS LYING ABOUT THE SHOW UP. BEING CONDUCTED WHILE EL TURKEY WAS INSIDE EMS TRUCK. IT CANNOT BE DOUBTED THAT APPELLANTS RIGHT TO CROSS-EXAMINE P.O. PAMPENA INCLUDED THE RIGHT TO CONFRON THE WITNESS AGAINST HIM "ONE OF THE SAFEGARDS ESSENTIAL TO A FAIR TRIAL" WHICH INCLUDES AS A MINIMUM, A RIGHT ;CONFRONT THE WITNESS AGAINST HIM, TO OFFER TESTIMONY AND TO BE REPRESENTED BY COUNSEL, PEOPLE V PHONVELLE 254 NYS2D 775, KIRBY V UNITED STATES 174 U.S. 47, ALFORD V U.S. 282 U.S. 687, IN RE OLIVER 333 U.S. 257, POINTER V STATE OF TEXAS  KASTIGAR V U.S. 406 U.S. 441, US. VIANNIELLO

740. F SUPP 171. SIMILARLY P.O. PAMPENA'S TESTIMONY AT THE HEARING THAT HE FILLED OUT AN AIDED CARD, WHILE CONDUCTING A SHOW UP OF APPELLANT TO EL TURKEY WAS DISPROVED BY EL TURKEY (TRI 376 - TRI 378, TRI 384 - TRI 385, TRI 412 - TRI 413). BY THE TESTIMONY OF HIS COLLEAGUE P.O. LANNING WHO WAS AT THE CRIME SCENE AND PUT (BROOKS) APPELLANTS CO DEFENDANT IN CUFFS (BA 27 - BA 28, TRI 8 - TRI 9, TRI 462 - TRI 463) AND BY HIS OWN PAPERWORK (SEE BROOKS FELONY COMPLAINT) OR P.O. LANNING'S MEMO BOOK. DURING THE HEARING P.O. PAMPENA'S FALSE TESTIMONY WAS HELD TO BE THE AUTHORITY WHICH MOVED THE COURT, RATHER THAN APPELLANT'S CONSTITUTIONAL RIGHTS WHICH GUARANTEES PROTECTION FROM THE ANCIENT EVIL OF SECRET TRIAL. HENCE PRODUCTION OF THE AIDED CARD BECAME AN UNFULFILLABLE OBLIGATION, BECAUSE LIKE EVERYTHING ELSE WAS FABRICATED BY P.O. PAMPENA. SO RATHER THAN RESUME THE HEARING ON THE ADJOURNED DATE OF JAN 14, 2014 AND TURN OVER THE STATEMENT FROM P.O. PAMPENA THAT HE HAD COMMITTED PERJURY OR DESTOYED THE AIDED CARD. THE COURT TERMINATED THE HEARING

49

AND ABANDOND THIER DUTY TO DISCLOSE WHATEVER STATEMENT P.O. PAMPENA GAVE (BRADY V MARYLAND 373 U.S. 83) OR THE AIDED CARD (PEOPLE V ROSARIO 9 NY2D 286), PEOPLE V MALINSKI 262 NYS2D 65, PEOPLE V KASS 25 NY2D 123, PEOPLE V GILLIGAN 39 NY2D 769, PEOPLE V ALONGI 131 AD2D 767, UNITED STATES V BAGLEY 473 U.S. 667, PEOPLE V CHIN 67 NY2D 22, PEOPLE V SPRINGER 122 AD2D 87, PEOPLE V FEIN 18 NY2D 162, PEOPLE V ROBINSON 133 AD2D 860, ADDITIONALLY WHERE THE PEOPLE FAIL TO EXERCISE DUE CARE IN PRESERVING ROSARIO MATERIAL AND THE APPELLANT IS PREJUDICED THE COURT MUST IMPOSE APPROPRIATE SANCTIONS, PEOPLE V WALLACE 76 NY2D 953, U.S V AUGARS 427 U.S. 97, U.S. V BRYANT 439 F2D 642, HILLARD V SPALDING 719 F2D 1446, ARIZONA V YOUNGBLOOD 488 US 51, PEOPLE V COLES 62 NY2D 908.

"THE CONSTITUTIONAL REQUIREMENT OF DUE PROCESS IN SAFEGUARDING THE LIBERTY OF THE CITIZEN AGAINST DEPRIVATION THROUGH THE ACTION OF THE STATE EMBODIES THE FUNDAMENTAL CONCEPTIONS OF JUSTICE WHICH LIE AT THE BASE OF CIVIL AND POLITICAL INSTITUTIONS. IT IS A REQUIREMENT THAT

CANNOT BE DEEMED TO BE SATISFIED BY MERE NOTICE AND HEARING IF A STATE HAS CONTRIUED A CONVICTION THROUGH THE PRETENCE OF A TRIAL WICH IN TRUTH IS BUT USED AS A MEANS OF DEPRIVING A DEFENDANT OF LIBERTY THROUGH A DELIBERATE DECEPTION OF COURT AND JURY BY THE PRESENTATION OF TESTIMONY KNOWN TO BE PERJURED". SUCH A CONTREVANCE BY A STATE TO PROCURE THE CONVICTION AND IMPRISONMENT OF A DEFENDANT IS AS INCONSISTENT WITH RUDIMENTARY DEMANDS OF JUSTICE AS IS THE OBTAINING OF A LIKE RESULT BY INTIMIDATION." MOONEY V HOLOHAN 294 U.S. 103, HERBERT V LOUISIANA 272 U.S. 312, NAPUE V ILLENOIS 360 U.S. 264, PYLE V KANSAS 317 U.S. 213, ALCOTA ALCORTA V TEXAS 355 U.S. 28, GIGLIO V UNITED STATES 405 U.S. 150, PEOPLE V ALFINITO 264 NYS2D 243, UNITED STATE V BASURTO 497 F2D 781, UNITED STATES V FLAHERTY 668 F2D 566, PEOPLE V LEARY 305 NY 793, PEOPLE V TYLER 46 NY2D 251, UNITED STATES V DEMARCO 401 F SUPP 505, PEOPLE V FEERICK 692 NYS2D 638. THE FUNCTION OF A PROSECUTOR IS NOT TO TACK AS MANY SKINS OF VICTIMS AS POSSIBLE TO THE WALL. HIS FUNCTION IS TO VINDICATE

49

THE RIGHT OF PEOPLE AS EXPRESSED IN THE LAWS AND GIVE THOSE ACCUSED OF CRIME A FAIR TRIAL, UNITED STATES V KOJAYAN 1993 U.S. APP. LEXIS 23921, PEOPLE V GONZALEZ 2001 U.S. APP. LEXIS 25257, UNITED STATES V VAVAGES 151 F3D 1185. IT IS CLEAR THAT IN THIS CASE THE PROSECUTOR DID NOT, THIS CONVICTION SHOULD BE DISMISSE.

<u>POINT TWO</u>

ON OR ABOUT NOVEMBER 21, 2016 APPELLANT FILED A MOTION WITH THE APPELLATE DIVISION SECOND DEPARTMENT CITING AMONG OTHER ISSUES JUDICIARY LAWS 290, 292, 295, (PEOPLE V SCHAINUCK 286 NY 161) "THAT THE STATE MUST PROVIDE AN INDIGENT DEFENDANT WITH A TRANSCRIPT OF PRIOR PROCEEDINGS WHEN THAT TRANSCRIPT IS NEEDED FOR AN EFFECTIVE DEFENCE OR APPEAL" (UNITED STATES V YOUNG 472 F2D 628, CITING BRETT V NORTH CAROLINA 404 U.S. 226. APPELLANT ARGUED THE COURTS FAILURE TO PROVIDE HIM WITH THE SUPPRESSION HEARING MINUTES ALLEDGEDLY CONDUCTED ON JANUARY 4, 2014 OR JANUARY 14 2014. CITING PEOPLE V HANNIGAN 197 NYS2D 152, "WHERE AS HERE, THERE ARE NO MINUTE

COURT DOCUMENTS OR OTHER INCONTRO-
VERTIBLE EVIDENCE PRESENTED TO REBUT
THE CLAIM OF THE PETITIONER, THE
PETITION MAY NOT BE DISMISSED WITH-
OUT A HEARING" (PEOPLE V BARTLAM 9 NY2D
550, PEOPLE V LUPO, FAY 13 NY2D 253). SO THE
COURT APPARENTY TOOK THAT TO BE THE FACT
PARTICULARLY (196 NE2D 58) SINCE THE TRIAL
MINUTES DID NOT SHOW DEFENDANT'S
THERE AT THE TIME.

ON JANUARY 13, 2017 THE APPELLATE
DIVISION SECOND DEPARTMENT GRANTED
APPELLANT MOTION TO FILE THIS
SUPPLEMENTAL BRIEF AND ORDERED THE
COURT TO TURN OVER THE TRANSCRIPTS
OF THE PROCEEDINGS CITED IN MY
MOTION IF ANY EXISTED. FOR THE SAKE
OF BREVITY I WILL OMMIT LEAGAL ARGUE-
MEN AND CASE CITINGS (SEE APPELLANTS
PROSE MOTION). APPELLANT REQUESTED
TRANSCRIPTS FROM THE PROCEEDINGS
IN TAP-A JUDGE KRON FOR 30.20 AND
SIX AMENDMENT PURPOSES, NINE
HUNDRED AND EIGHTY SIX DAYS
ELAPSED BETWEEN APPELLANTS ARRES

51

ON JULY 3, 2012 AND MARCH 4, 2015
APPELLANTS CONVICTION AT TRIAL. APPELLANT
DURING THE PRETRIAL CONFERENCE WAS NOT
ALLOWED TO SUBMIT MOTIONS, (NOTE
APPELLANT WAS REPRESENTING HIMSELF
PRO SE ALREADY GRANTED BY JUDGE KRON IN
TAP-A). TOO APPELLANT SUBMITTED A, C.P.L
330.30 MOTION WHICH WAS DENIED BY
JUDGE SCHWARTZ. ALSO APPELLANT IN HIS
MOTION TO THE APPELLATE DIVISION ARGUE
INEFFECTIVE ASSISTANCE OF APPELLANT
COUNSEL FOR SUBMITTING HIS MOTION
WITHOUT HAVEING REVIEWED ALL THE
MINUTES AND FAILURE TO RAISE CONSTITUTI
-AL ISSUES, RIGHT TO BE PRESENT, RIGHT
TO PRESENCE OF COUNSEL, CONFRONTATION
ETCETERA. DESPITE THE APPELLATE COURTS
DECISION/ORDER THE COURT HAS NOT
COMPLIED WITH PROVIDING APPELLANT
THE ABOVE TRANSCRIPTS AS CITED IN
HIS MOTION THEREBY PREDJUDICING THIS
APPEAL.
        THE INDICTMENT AND CONVICTION
SHOULD BE DISMISSED IN ITS ENTIRERTY

52

## POINT THREE

LINDA POWMAN ATTORNEY FOR APPELLANT SUBMITTED AN OMNIBUS MOTIOND DATED OCTOBER 12, 2012, TO PART TAP "A" FOR JUDGE CAMACHO, WHO RETURNED A DECISION/ ORDER DATED DECEMBER 19, 2012 GRANTING APPELLANTS MOTION TO THE MAPP, HUNTLEY, WADE, DUNAWAY HEARINGS. JUDGE HOLLIE WHO CONDUCTED THE SUPPRESSION HEARING TERMINATED THOSE HEARINGS WITHOUT GIVING A RULEING ON THE HUNTLEY/MAPP PORTION. HOWEVER IN APPELLANTS MOVING PAPERS TO SUPPRESS IDENTIFICATION TESTIMONY ARGUED THAT UPON INFORMATION AND BELIEF THE DEFENDANT WAS IDENTIFIED IN A ONE ON ONE SHOWUP IDENTIFICATION CONDUCTED ON JULY 3, 2012 AT ABOUT 9:10 P.M IN VICINITY OF NORTHERN BOULEVARD AND 105 STREET IN THE COUNTY OF QUEENS, CPL 710.30 NOTICE AND THE DEMAND FOR A BILL OF PARTICULARS REQUESTING #7. WERE ANY DESCRIPTIONS OF THE PERPETRATOR OF THE ALLEDGED CRIMES GIVEN TO THE POLICE OR ANY LAW ENFORCEMENT AGENCY ON OR AFTER THE DATE OF THE ALLEDGED CRIME

#10. PROVIDE COUNSEL IN THE MANNER
WITH WHICH THE DEFENDANT WAS IDENTIFIED
AS THE PERPETRATORE OF THE CRIMES ALEDGED
C.P.L 200.95 (6). IN THE PEOPLES RESPONE TO DEFENDA
ANT'S OMNIBUS MOTION PAGE # 7 STATES : UPON
INFORMATION AND BELIEF, THE SOURCE BEING,
POLICE OFFICER PAMPENA THE DEFENDANT WAS
IDENTIFIED BY THE COMPLAINANT IN A SHOWUP
ON JULY 3, 2012 AT NORTHERN BOULEVARD AND 105
STREET. THIS PROCEEDURE WAS CONDUCTED
FAIRLY AND IN A NON-SUGGESTIVE MANNER.
THE PROPRIETY OF THE POLICE CONDUCT IN CONNEC-
TION WITH THE IDENTIFICATION PROCEDURE USED
IN THIS CASE CAN BE AMPLY DEMONSTRATED.
     THE PEOPLE HEREWITH CONSENT TO A WADE
HEARING UNDER CONSTRAINT OF SECTION 710.60 OF
THE CRIMINAL PROCEDURE LAW. THE PEOPLE
SHOULD HAVE GIVEN NOTICE TO DEFENDANT THAT
THE ALLEGE FACTS SHOWING the IDENTIFICATION
THEY INTENDED TO USE AT TRIAL WAS NOT THE
SORT THAT REQUIRES A WADE PRIOR IDENTIFICA-
TION HEARING (U.S. V WADE 388 U.S. 218).
PARTICULARLY THAT EL TURK CLAIMED TO KNOW
APPELLANT VERY WELL (TRC 384-385). BUT BASED
ON A SHOWUP IDENTIFICATION DURING A WADE
HEARING THAT WAS NEVER CONCLUDED (BA 36-
BA 52). WHERE AT TRIAL EL TURKEY TESTIFIED

THAT THE ALLEGE SHOW UP DESCRIBED BY
P.O. PAMPENA NEVER TOOK PLACE INSIDE EMS
TRUCK (TRI 384) AND TWICE STATED THAT THIS
BLACK GAY HOMELESS MAN HE SAW HUNDREDS
OF TIME, OVER THE COURSE OF MONTHS WAS
NOT PRESENT IN THE COURT ROOM (TRI 371-TRI
385). IF THE WITNESS IS UNABLE TO IDENTIFIE
THE DEFENDANT AT TRIAL THE DEFENDANTS
CONVICTION (440 NYS2D 907) SHOULD NOT REST
SOLELY UPON EVIDENCE OF A PRETRIAL IDENT
IFICATION MADE UNDER CIRCUMSTANCES
WHICH WERE LIKELY TO PRODUCE AN UNRELIABLE
RESULT (PEOPLE V TROWBRIDGE 305 NY 471).
THE JUNG HING RULE PRECLUDED TESTIMONY
OF A PREVIOUSLY MADE IDENTIFICATION WHETH-
ER IT WAS TENDERED BY THE PERSON WHO HAD
MADE THE IDENTIFICATION OR BY ONE WHO
WAS A WITNESS TO IT (PEOPLE V RAGAZINSKY
195 AD 743). WHILE GREAT WEIGHT MUST BE ACCORDED
THE FINDINGS OF THE HEARING COURT (PEOPLE
V PROCHILO 41 NY2D 759) A REVIEWING COURT
SHOULD NOT "DISCARD COMMON SENSE AND COMMON
KNOWLEDGE" PEOPLE V GARAFOLO 44 AD2D 86, PEOPLE
V LEWES 600 NYS2D 272, THE TESTIMONY GIVEN
BY P.O. PAMPENA IS A CLASSIC EXAMPLE OF THAT
WHICH HAS BEEN PATENTLY TAILORED TO NULLIFY
CONSTITUTIONAL OBJECTIVES. (PEOPLE V MANNTYNE

55

381 NYS2D 254). THROUGHOUT THE WHOLE
TIME THE APPELLANT HAS MAINTAINED HIS
INNOCENTS AND THAT P.O. PAMPENA'S STORY
OF THE EVENTS WERE FABRICATED (S21).


IN THE ENTREST OF JUSTICE
THE INDICTMENT AND CONVICTION
SHOULD BE DISMISSED.

# EXHIBIT G

THE CITY OF NEW YORK DEPARTMENT OF CORRECTION

16-MAR-15 17:39:50          JAIL TIME CERTIFICATION                PAGE     1

NYSID: 05414878K          Docket #: 2012QN035707          Indictment #:
Name: HALL, RAYMOND
Controlling City Sentence Time:0000          Calculated Jail Time : 0987
                                           + Additional Jail Time : 0000
                                           - Excess Jail Time     : 0000
                                                                    ----
                                             Total Jail Time:       0987


All Department of Correction procedures were followed in preparing the certification.


Jail Time Certified by  *K Scott a #12947*     Facility: ARDC
============================================================================
             Associated        Arrest    Discharge   Last  Start City
NYSID    Docket      Indictment  Date     Date        Code  Hous Sent Date Sent #  # Days
============================================================================
4411205467 2012QN035707 02228/2012 03-JUL-12          ARDC                        0987