UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RAYMOND BALL,

                          Petitioner,              No. 19 Civ. 5310 (RRM)(LB)

             v.

ANGELENE STEVENSON,

                          Respondent.

## MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Respondent
28 Liberty Street
New York, New York 10005
(212) 416-6072

LISA E. FLEISCHMANN
MATTHEW B. KELLER
  *Assistant Attorneys General*
      *of Counsel*

Dated: December 13, 2019

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................... 3

FACTUAL AND LEGAL BACKGROUND ................................... 5

    A.   Indictment and Pretrial Proceedings ........................ 5

    B.   The Trial ..................................................................... 11

    C.   Direct Appeal ............................................................. 15

ARGUMENT .................................................................................. 16

Point I:  The Perjured Testimony Claim is Meritless
(Ground One of the Petition). ...................................... 16

Point II:  The Fourth Amendment Claim is Barred by *Stone v. Powell*
(Ground Two of the Petition). ..................................... 20

Point III:  Petitioner's Claimed Violation of His Right to be Present
is Meritless (Ground Three of the Petition). .............. 22

Point IV: Petitioner's Evidentiary Claim Regarding the Victim's Out
of Court Identification is Procedurally Barred and, in any event,
Not Cognizable on Federal Habeas Review
(Ground Four of the Petition). ..................................... 25

    A.   The Claim is Barred on Adequate and Independent State Law
Grounds ...................................................................... 25

    B.   The Claim is Not Cognizable on § 2254 Review ..................... 28

Point V:  The Unexhausted Ineffective Assistance of Counsel Claim
Lacks Merit. .................................................................. 30

    A.   The Claim is Unexhausted .......................................... 31

    B.   The Claim is Meritless ............................................... 31

CONCLUSION ............................................................................... 35

## INTRODUCTION

On July 3, 2012, at approximately 8:30 p.m., cab driver Tareek Elturkey went to his corner deli in Queens to buy some cigarettes.  On his way into the deli he saw Raymond Ball ("petitioner"), whom Elturkey knew as someone who regularly panhandled in the area.  Indeed, Elturkey usually gave petitioner a dollar, or bought him coffee, when he encountered him.

After Elturkey left the store, petitioner and his codefendant, Elijah Brooks, followed Elturkey up the block.  When Elturkey asked Brooks what they wanted, Brooks knocked him to the ground.  With petitioner pinning Elturkey down, Brooks punched him in the face and slammed his head against the concrete repeatedly. Petitioner went through Elturkey's pockets, taking his iPhone and $250 in cash. Elturkey sustained lacerations to his forehead, the back of his head and mouth, as well as a black and blue eye.  The assault knocked one of his teeth loose, requiring Elturkey to pull it out the next day.

In this *pro se* 28 U.S.C. § 2254 habeas corpus action, petitioner seeks review of the resulting 2015 judgment of Supreme Court, Queens County, convicting him upon a jury verdict of two counts of Robbery in the Second Degree (N.Y. Penal Law § 160.10(1) and (2)(a)), Assault in the Third Degree (Penal Law § 120.00(1)) and Criminal Possession of Stolen Property in the Fifth Degree (Penal Law § 165.40), and sentencing him as a second felony offender to a 10-year prison term to be followed by

3

five years of post-release supervision.  (ECF #1, "Pet." at 1.)[1]  The Appellate Division, Second Department, affirmed the conviction and, on September 13, 2018, the New York Court of Appeals denied leave to appeal.  *People v. Ball*, 162 A.D.3d 680 (2d Dep't 2018), *leave denied*, 32 N.Y.3d 1002 (2018).

The Petition raises five claims: (1) the People knowingly presented false testimony; (2) petitioner was arrested without probable cause; (3) petitioner was deprived of his right to be present at pretrial proceedings; (4) the trial court improperly admitted at trial third-party testimony as to an out-of-court identification; and (5) ineffective assistance of trial counsel.  (Pet. at 5-9, 18, 26.)

The Petition should be denied.  The Fourth Amendment claim is barred pursuant to *Stone v. Powell*, 428 U.S. 465 (1976).  The claim regarding the out-of-court identification is procedurally barred because the state court rejected it on adequate and independent state law grounds, precluding habeas review.  The ineffective trial counsel claim is unexhausted because petitioner failed to raise it before the state courts and, in any event, that claim is plainly meritless.  In any event, none of the claims in the Petition warrant habeas relief.  Petitioner cannot demonstrate that the Appellate Division decision rejecting those claims was objectively unreasonable, as he is required to do under the rigorous requirements of

---

[1]  Page numbers refer to those generated by ECF appearing in the upper-right corner of each page.

4

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, the Petition should be dismissed and no certificate of appealability should issue.

## FACTUAL AND LEGAL BACKGROUND

### A.    Indictment and Pretrial Proceedings

By Queens County Indictment 2228/12, petitioner and codefendant Elijah Brooks were charged with two counts of second-degree robbery (Penal Law § 160.10(1) (aided by another) and (2)(a) (causes physical injury)) and one count of third-degree assault (Penal Law § 120.00(1) (intentional physical injury)).[2] Petitioner was charged additionally with one count of fifth-degree criminal possession of stolen property (Penal Law § 165.40).

### 1.    Motion to Suppress

In May 2013, the trial court conducted a pretrial *Dunaway/Huntley/Mapp/Wade* hearing.[3] At the hearing, New York Police

---

[2] After a joint trial with petitioner, Brooks was convicted of two counts of second-degree robbery and one count of third-degree assault. *People v. Brooks*, 154 A.D.3d 955 (2d Dep't 2017), *leave denied*, 31 N.Y.3d 1011 (Apr. 10, 2018).

[3] A *Dunaway* hearing is held to determine whether a statement or other intangible evidence obtained from a person arrested without probable cause should be suppressed. *See Dunaway v. New York*, 442 U.S. 200 (1979). A *Huntley* hearing tests the voluntariness of a defendant's post-arrest statements. *See People v. Huntley*, 15 N.Y.2d 72 (1965). A *Mapp* hearing determines whether the seizure of physical evidence from a defendant violated his constitutional rights. *See Mapp v. Ohio*, 367 U.S. 643 (1961). A *Wade* hearing is held to assess whether the state used unduly suggestive identification procedures to obtain evidence against a defendant in violation of due process. *See United States v. Wade*, 388 U.S. 218 (1967).

Department ("NYPD") Officer Daniel Lanning testified that, at approximately 9:00 p.m. on July 3, 2012, he received a report of a robbery on Northern Boulevard in Queens.  The suspects were reported to be black men, one of whom was wearing a white shirt and black pants.  (H. 4-7, 11-12.)[4]  Lanning drove to the scene where he found the robbery victim, Tareek Elturkey, bleeding from the head and mouth.  (H. 7.)  Elturkey told Lanning that he had been robbed and that the perpetrators had fled southbound on 105th Street.  (H. 7.)  Elturkey and Lanning drove in that direction and, after driving for "[a]bout two seconds," Elturkey pointed at codefendant Brooks and identified him as one of the perpetrators.  (H. 8-9.)  Lanning took Brooks into custody.  (*Id*.)

NYPD Officer Angelo Pampena also responded to the robbery report.  (H. 23-25.)  Approximately one and a half blocks from the robbery location, Pampena observed petitioner – a black male wearing a white shirt and black pants – running away from the scene.  (H. 25-26.)  As Pampena exited his marked vehicle, petitioner gestured to an iPhone he was holding and stated spontaneously: "I bought this phone from 105 Street and Northern Boulevard."  (*Id*.)  Officer Pampena handcuffed petitioner and, during a search for weapons, found $250 in cash consisting of one $100

---

[4] "H." refers to the transcript of the May 21, 2013 suppression hearing.  "Tr." preceded by a date refers to the transcript of proceedings on that date.  "T." refers to the trial transcript and "S." refers to the transcript of sentencing.

6

bill, seven $20 bills and a $10 bill.  (H. 26-27.)  Officer Pampena placed petitioner in the vehicle and drove to the scene.  (H. 27.)

At the scene, Pampena encountered Elturkey who was seated in the rear of an ambulance receiving treatment for a large laceration on his head and a swollen and bruised eye.  (H. 28-29.)  Elturkey told Pampena that he had been attacked by two men and that, while one of the men beat him, the other had taken Elturkey's iPhone and wallet, which contained $250.  (H. 27-30.)  Because Elturkey had just obtained the cash that had been stolen, he was able to report to Pampena the denominations: one $100 bill, seven $20 bills and one $10 bill.  (H. 27.)

With petitioner standing in front of Pampena's vehicle approximately three car lengths from the ambulance, Elturkey identified petitioner as the person who took his iPhone and wallet.  (H. 28, 31-32, 46-47.)  Elturkey provided the correct password to unlock the iPhone Pampena had recovered from petitioner.  (H. 32.)  Back in Pampena's vehicle, petitioner asked Pampena what he was being charged with. When Pampena told him he was being charged with robbery petitioner replied: "if the guy said it was his then I guess it was his."  (H. 33.)

The court denied petitioner's motion to suppress.  (SR50-51.)  There was probable cause to arrest petitioner, the court concluded, based on the description Pampena received over the radio prior to encountering petitioner, as well as petitioner's spontaneous admission that he was coming from the scene of the robbery and Elturkey's description and knowledge of the stolen property recovered from

petitioner.  The court further concluded that the showup was not unduly suggestive because it happened close in time and location to the crime.  (*Id.*)

In January 2014, the court reopened the suppression hearing for further questioning of Officers Lanning and Pampena on the subject of an EMS report that had been unavailable at the initial hearing.  (1/8/14 Tr. at 1-14.)  Officer Lanning testified that Elturkey was bleeding from his mouth and the top of his face, but he was not squinting or wiping his eyes when he identified co-defendant Brooks.  (*Id.* at 16, 19-20.)  Officer Pampena testified that, after arresting petitioner, they had arrived at the scene at approximately 9:05 p.m. (*Id.* at 32-33.)  Elturkey was sitting in the back of an ambulance with a swollen black eye and a laceration on his head, and his clothes were ripped and covered in blood.  (*Id.* at 34-36.)  As Officer Pampena spoke to Elturkey, the EMTs were cleaning blood off his head.  However, Pampena did not see the EMTs wipe blood from around Elturkey's eyes.  (*Id.* at 46-48.)

Following the reopened hearing, the court again denied the suppression motions. (SR53; Pet. Exhibit D.)

### 2.    Waiver of Counsel

At a December 2013 appearance, petitioner explained to the court that he had different views from assigned counsel Linda Povman, Esq., on how best to conduct the defense.  (12/16/2013 Tr. at 7.)  After the court denied the application "to relieve" attorney Povman, petitioner explained that he was in fact asking to represent himself.  (*Id.* at 8.) The trial court denied that application with respect to the hearing,

8

and deferred the application to proceed pro se at trial to the trial judge.  (*Id*.)    On January 8, 2014, before the reopened suppression hearing, petitioner again sought to proceed pro se or to "have another lawyer represent" him.  Again, the court denied the application.  (1/8/14 Tr. at 2-3.)

At a January 5, 2015, appearance, petitioner moved before the trial judge to proceed pro se.  (1/5/2015 Tr. at 3-5.)  In response, the court advised petitioner of the risks of giving up attorney Povman, who had "decades of experience."  (*Id*. at 5-6.)  In response to petitioner's complaints about the frequency of visits from counsel and the long pendency of the case, the court noted that attorney Povman had experienced "extended medical issues."  (*Id*. at 7.)  Nevertheless, petitioner insisted on representing himself, at which point the court indicated that it would permit petitioner to proceed pro se.  (*Id*. at 8.)

On January 20, 2015, immediately prior to jury selection, the court asked petitioner whether he still wanted to proceed pro se and petitioner responded in the affirmative.  (T.3.)  The court then engaged petitioner in a lengthy colloquy to ensure that petitioner's decision was knowing and voluntary.  (T.3-16.)  First, the court questioned petitioner regarding his educational and employment background, his understanding of the English language and his physical and mental health.  (T.3-4.)  Petitioner affirmed that he could read, write, speak and understand the English language, that he was not being treated for any mental or physical health conditions, that he had taken college-level courses and that he had various work experience, including as an electrician's assistant.  (*Id*.)

9

The court commented on petitioner's prior experience with the criminal justice system, and petitioner agreed that he had been in a courtroom on "many" prior occasions.[5]  (T.4.)  The court asked if anyone had threatened, coerced, or influenced petitioner to represent himself against his will, and petitioner responded that no one had threatened or coerced him, but that it was "hard for a black man to get the proper representation here in the judicial system" and that "[s]ometimes we really don't have a choice in the matter in the case that we want to be represented."  (*Id.*)  The following exchange ensued:

> THE COURT: Well, you have a choice. You can have Miss Povman, represent, that's your choice.
>
> PETITIONER: Well, actually, your Honor, I had what you call explained to the judge previously that it was Miss Povman's inadequacy as a representation that played a big role in making this choice.
>
> THE COURT: Right.
>
> PETITIONER: I mean, I would like to go forward though at this stage of the proceeding.

(T.4-5.)  The court continued to question petitioner regarding his prior applications to relieve attorney Povman, his understanding of the charges, the purpose of certain pretrial proceedings and the court's and jury's functions at trial. (T.5-6, 9-10.)  Petitioner answered each of the court's questions and told the court

---

[5] Petitioner had 25 arrests prior to the instant case.  (1/5/2015 Tr. at 4; T. 28-36.)

that he had been permitted to represent himself in a prior case which had been dismissed before trial.  (T.10-12.)

The court confirmed that petitioner had discussed his decision to waive counsel with Povman "numerous times."  (T.12.)  The court again asked petitioner whether he wished to waive the right to be represented, and petitioner responded: "That's correct, sir."  (T.13.)  Finally, after giving petitioner a detailed warning about the "inherent unfairness" of self-representation, and after petitioner's unequivocal statements that he was "here to represent [him]self" and that he was ready to do so, the court found that petitioner had knowingly, intelligently and voluntarily waived his right to counsel.  (T.13-16.)  The court asked attorney Povman to remain "in an advisory capacity."  (T. 16.)  Petitioner did not object.

## B.    The Trial

The trial began on January 22, 2015 and the jury rendered its verdict on January 30.  The People presented the testimony of the victim and Officers Lanning and Pampena.  Petitioner presented the testimony of Emergency Medical Technician Adi Gonzales.

### 1.    The People's Case

Mr. Elturkey was a cab driver who worked twelve-hour shifts, six or seven days a week.  (T.338.)  He testified that, on July 3, 2012, at 8:30 p.m., he left his apartment on 105th Street in Queens to buy some cigarettes, stopping first at an ATM.  (T.341-42.)  He took $260 from the ATM, in $20 denominations.  (T.357.)  He then proceeded

11

to the deli on the corner of 105th Street and Northern Boulevard.  (T.342-43.)  As he approached, Elturkey saw a man who regularly panhandled outside of the deli. (T.344-45.)  In the past, Elturkey had given the man a dollar or a coffee when he had seen him.  (T.344.)  On this night, the man – whom Elturkey referred to as the "homeless man" – was with a "bunch" of other men outside the store.  (T.345.)  When asked whether he saw the homeless man in the courtroom, Elturkey answered in the negative.  (T.345-46.)

In the deli, Elturkey paid $10 for cigarettes with one of the $20 bills he had received from the ATM, leaving him with $250.  (T.358-59.)  Elturkey also exchanged five of the $20 bills with another customer for a $100 bill, leaving him with a $100 bill, seven $20 bills, and one $10 bill.  (T.258.)  Elturkey left the deli and started to walk down 105th Street.  He noticed he was being followed by a black man with short hair, taller than Elturkey and weighing 250 or 300 pounds.  (T.349.)  Feeling unsafe, Elturkey walked into the street and turned around to walk back to Northern Boulevard.  The man confronted Elturkey and a second, smaller man – the homeless man from the deli – came up from behind Elturkey.  (T.348, 354-55, 578.)  The larger man directed the homeless man to punch Elturkey.  The larger man then pushed Elturkey between two parked cars, causing Elturkey to fall. (T.353, 363-64.)

Once Elturkey was on the ground, the homeless man pinned him down while the larger man punched him in the face several times and slammed his head against the sidewalk repeatedly.  (T.348, 364-66, 400-01.)  The homeless man then reached

12

into Elturkey's pockets and took his iPhone as well as his wallet containing the $250 cash.  (T.366-68, 420.)

Elturkey could not identify the larger man who had beat him in the courtroom. Elturkey explained that it had been a "long time" since the robbery which had taken place "two or three years ago," that he did not have a good memory for faces and that he was having difficulty remembering.[6]  (T.353-54.)

After the robbery, Elturkey went back to the deli and asked the owner to call 911.  (T.371.)  An unmarked police car arrived approximately ninety seconds later, and Elturkey got into the car.  (T. 373.)  As the police drove up 105th Street Elturkey saw the larger man who had attacked him, and the police arrested that man. Elturkey was sure the man the police arrested was the man who had hit him and slammed his face against the ground.  However, when asked again if he saw that person in the courtroom, Elturkey answered in the negative and stated that he was having trouble remembering.  (T. 374, 377-78.)

While Elturkey was being treated in an ambulance, a uniformed officer told him that he was going to show him someone and instructed Elturkey to say whether or not that was the person who robbed him.  (T.379.)  Elturkey was sure the man the police showed him was the homeless man who had taken his property; however, he did not see that person in the courtroom.  (T.384-85.)  Elturkey testified that the

---

[6] The robbery occurred on July 3, 2012, and Elturkey testified on January 23, 2015.

homeless man had the "same" hair as petitioner's hair, and was the same weight. (T.421, 431.)

Officers Lanning and Pampena testified consistently with their hearing testimony. (T.433-49, 497-542.) Officer Lanning testified that the man that Elturkey had identified at the scene as the heavier man who assaulted him was codefendant Brooks. (T.445-47.) Officer Pampena testified that petitioner was the man that Elturkey had identified at the scene as the homeless man who rifled through his pockets and took his phone and wallet. (T.505, 513-14.)

### 2.   The Defense Case

EMT Adi Gonzales responded to the call of Elturkey's mugging. (T. 613-14.) Gonzales' report of the call indicated that Elturkey refused medical treatment. (T.620-21.) Gonzalez could not recall whether Elturkey was brought into the ambulance; however, more often than not on "street calls" such as this one he would speak with patients inside the ambulance for privacy reasons. (T.621-23, 639.) Gonzales' report also indicated that he observed pain, swelling, and soft tissue injury to Elturkey's forehead and face. (T.624-25.) The report did not indicate significant bleeding. (T.625.)

### 3.   Verdict and Sentence

The jury found petitioner guilty as charged of two counts of second-degree robbery (Penal Law § 160.10(1) and (2)(a)), third-degree assault (Penal Law § 120.00(1)) and fifth-degree criminal possession of stolen property (Penal Law §

14

165.40).  (T. 726-29.)  On March 4, 2015, the court sentenced petitioner as a second felony offender to concurrent ten-year prison terms plus five years post-release supervision on the robbery convictions, which merged with the one year sentences for the assault and stolen property convictions.  (S. 24.)

## C.    Direct Appeal

Petitioner filed a counseled brief to the Appellate Division, Second Department, raising four claims: (1) the trial court improperly denied petitioner's pretrial motion to suppress (SR15-21); (2) the trial court improperly admitted Officer Pampena's testimony regarding Elturkey's out-of-court identification of petitioner (SR21-28); (3) the trial court improperly permitted petitioner to represent himself (SR29-34); and (4) the sentence was excessive (SR35-37).  Petitioner filed a pro se supplemental brief arguing that: (1) the motion to suppress should have been granted because Officer Pampena's testimony was not credible; (2) the People failed to disclose relevant documents; (3) petitioner was deprived of his right to be present and his right to counsel at proceedings on January 4 and January 15, 2015, respectively; and (4) petitioner was not provided with all the transcripts he needed to adequately prepare his pro se brief, and appellate counsel ineffectively briefed the appeal. (SR105-61.)  The People filed opposing briefs.  (SR41-104, 162-84.)

In June 2018, the Appellate Division unanimously affirmed.  *People v. Ball*, 162 A.D.3d 680 (2d Dep't 2018).  (SR185-86.)  As relevant to the claims in the Petition, the court held that there was probable cause for petitioner's arrest and, therefore, no

15

basis to suppress evidence.  *Id*. at 681.  The court also held that the claim regarding Officer Pampena's identification testimony was both unpreserved and meritless.  *Id*. The court held that the claims raised in petitioner's pro se supplemental brief likewise were meritless.[7]  *Id*.

Petitioner filed a counseled application for leave to appeal to the New York Court of Appeals and the People opposed.  (SR187-94.)  On September 13, 2018, the Court of Appeals denied leave to appeal.  *People v. Ball*, 32 N.Y.3d 1002 (2018) (SR195).

## **ARGUMENT**

### POINT I:  THE PERJURED TESTIMONY CLAIM IS MERITLESS (GROUND ONE OF THE PETITION).

Petitioner claims that the prosecutor knowingly presented false testimony at trial, violating his right to due process.  (Pet. at 5.)  Petitioner raised this claim on direct appeal in a pro se supplemental brief (SR153) and the Appellate Division summarily rejected it.  *Ball*, 162 A.D.3d at 681.  For federal habeas purposes, this was a rejection on the merits.  *Scrimo v. Lee*, 935 F.3d 103, 110-12 (2d Cir. 2019).

Because the state courts rejected the claim on the merits, the standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

---

[7] As for the claims raised in state court that are not raised in the Petition, the Appellate Division held that petitioner's waiver of counsel was "unequivocal, knowing, voluntary, and intelligent," and that the sentence was not excessive.  *Ball*, 162 A.D.3d at 681.

applies.   *See* 28 U.S.C. § 2254(d); *Parker v. Ercole*, 666 F.3d 830, 833 (2d Cir. 2012). To obtain habeas relief under AEDPA, petitioner must prove that the Appellate Division's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d). Clearly established law refers to "only the holdings," not the dicta, of the Supreme Court's decisions.  *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (citation omitted). To satisfy the high bar for habeas relief, a petitioner must establish that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) ("It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

Here, the trial court reasonably rejected petitioner's claim that the prosecution should be dismissed due to perjury by Officer Pampena which was "known to be false."[8]   (Pet. at 5, 18).   The trial court explained that petitioner's arguments regarding inconsistencies between Pampena's testimony and that of the other

---

[8] Because the Appellate Division did not explain its rationale for rejecting the claim, this Court "'look[s] through'" to the "rulings and explanations of the trial judge." *Scrimo*, 935 F.3d at 111-12 (quoting *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018)).

witnesses and documents were properly addressed to the jury and did not warrant dismissal as a matter of law.  (T.587.)

This was a reasonable application of clearly-established federal law; indeed, petitioner's claim lacks any merit.  To be sure, "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."  *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see also United States v. Agurs*, 427 U.S. 97, 103 (1976).  "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue*, 360 U.S. at 269; *accord Candelaria v. Graham*, No. 14 Civ. 2876 (AMD), 2018 U.S. Dist. LEXIS 168172, at *30-32 (E.D.N.Y. Sep. 28, 2018) (*Napue* is clearly-established federal law for purposes of claim that prosecution failed to correct false testimony); *Arriaga v. Warden*, No. 13 Civ. 6060, 2016 U.S. Dist. LEXIS 89777, at *27-31 (S.D.N.Y. Jul. 11, 2016) (same).  However, in order to prevail on such a claim petitioner must show that "(1) there was false testimony; (2) the prosecution actually knew of [the witness'] false testimony, and (3) there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Arriaga*, 2016 U.S. Dist. LEXIS 89777 at *28 (citing *Drake v. Portuondo*, 553 F.3d 230, 241 (2d Cir. 2009)).

Petitioner cannot establish any of these requirements.   In determining whether a witness has perjured himself, the Supreme Court relies upon the federal criminal perjury statute, 18 U.S.C. § 1621: a witness commits perjury when, testifying under oath or affirmation, "she gives false testimony concerning a material

matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (citing *United States v. Debrow*, 346 U.S. 374, 376 (1953)); *accord United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001); *Mullins v. Graham*, No. 17 Civ. 2958 (MKB), 2018 U.S. Dist. LEXIS 36762, at *13 (E.D.N.Y. Mar. 6, 2018). "Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." *Monteleone*, 257 F.3d at 219 (citing *United States v. Sanchez*, 969 F.2d 1409, 1414-15 (2d Cir. 1992)). Petitioner has the burden of demonstrating that the witness committed perjury by a preponderance of the evidence. *Candelaria*, 2018 U.S. Dist. LEXIS 168172 at *30.

Petitioner's claim is based on alleged inconsistencies between Officer Pampena's testimony and other evidence (T. 584-85; SR134-36), including Elturkey's testimony that he was outside the ambulance when he identified petitioner – Pampena testified that he was inside (T. 384, 422-23, 513-14) – and the EMT report indicating that the ambulance did not arrive until 9:11 pm – Pampena testified that the ambulance was on scene when he arrived with petitioner a minute or two after 9 p.m. (T.561-65). These inconsistencies, standing alone, do not establish perjury. Petitioner does not, and cannot, demonstrate that the other evidence was accurate and Officer Pampena was wrong; nor does he even consider the possibility that it was the other way around. In any event, petitioner fails to demonstrate that any errors in Pampena's testimony were material or anything more than simple inaccuracies or inconsistencies. Petitioner fails to provide any evidence that Pampena intentionally

testified falsely, that is, that he knew "of the falsity of his statements at the time he made those statements." *United States v. Markiewicz*, 978 F.2d 786, 811 (2d Cir. 1992) (citing *United States v. Sweig*, 441 F.2d 114, 117 (2d Cir. 1971)).  And, even if petitioner could make such a showing, he could not demonstrate that the prosecutor knew of any false testimony and failed to correct it.  Accordingly, petitioner's perjured testimony claim is without merit and the Petition should be dismissed.

### POINT II:  THE FOURTH AMENDMENT CLAIM IS BARRED BY *STONE V. POWELL* (GROUND TWO OF THE PETITION).

Habeas review is unavailable for petitioner's Fourth Amendment challenge to his arrest.  It is well-settled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial.  *Stone v. Powell*, 428 U.S. 465, 482 (1976); *Graham v. Costello*, 299 F.3d 129, 133-34 (2d Cir. 2002) (citing *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)).

*Stone* requires only that the state provide petitioner with the "opportunity" to litigate a Fourth Amendment claim.  *McPhail v. Warden, Attica Corr. Fac.*, 707 F.2d 67, 69-70 (2d Cir. 1983); *Gates v. Henderson*, 568 F.2d 830, 837-40 (2d Cir. 1977) (en banc).  Thus, in order to receive habeas review of a Fourth Amendment claim, a petitioner must demonstrate either: (1) that the state failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated; or (2) that the State had such procedures in place, but that the petitioner was unable to avail himself

of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan*, 975 F.2d at 70; *accord Cruz-Checo v. Smith*, No. 16 Civ. 4642 (AMD), 2019 U.S. Dist. LEXIS 153529, at *10 (E.D.N.Y. Sep. 9, 2019).

Here, petitioner does not contend that New York failed to provide appropriate corrective procedures to address his Fourth Amendment claim. Nor could he, as "the federal courts have approved New York's procedure for litigating Fourth Amendment claims" set forth in N.Y. CPL Article 710. *Capellan*, 975 F.2d at 70 n.1 (citations and internal quotation marks omitted); *Gates*, 568 F.2d at 837 & n.4. Moreover, petitioner does not and cannot allege an unconscionable breakdown in the state's corrective process. Petitioner received a robust hearing on his motion to suppress. Following the conclusion of the initial hearing, the court reopened the hearing months later so that petitioner and his codefendant could question the arresting officers regarding new evidence that had come to light in the interim. The court provided a thorough rationale detailing the probable cause for petitioner's arrest and, in response to petitioner's appeal of that determination, the Appellate Division agreed with the trial court's determination, citing relevant case law. *Ball*, 162 A.D.3d at 681. Thus, the state courts provided petitioner with a comprehensive, multi-level corrective procedure sufficient to redress any alleged Fourth Amendment violations.

Petitioner's disagreement with the suppression ruling (Pet. at 6) is beside the point. Mere disagreement with the outcome of a state court suppression ruling does not amount to an unconscionable breakdown in the state's corrective process. *Capellan*, 975 F.2d at 72; *Gates*, 568 F.2d at 840 ("we have no authority to review the

state record and grant the writ simply because we disagree with the result reached by the state courts"). Accordingly, the Fourth Amendment claims are barred by *Stone v. Powell*.

### POINT III: PETITIONER'S CLAIMED VIOLATION OF HIS RIGHT TO BE PRESENT IS MERITLESS (GROUND THREE OF THE PETITION).

The state court reasonably applied clearly-established Supreme Court law to reject petitioner's claim that he was denied his right to be present at a pretrial conference on January 14, 2014.[9] Petitioner raised this claim in his pro se supplemental brief on direct appeal (SR149) and the Appellate Division summarily denied it. *Ball*, 162 A.D.3d at 681. Accordingly, this Court reviews the claim pursuant to the "limited" authority granted by AEDPA. *Scrimo*, 935 F.3d at 111; *supra* at 14-15.

A criminal defendant's Sixth Amendment right to be present at trial extends "as a matter of due process to 'critical stages' of the trial beyond the presentation of evidence when the defendant's 'presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Jones v. Murphy*, 694 F.3d 225, 239 (2d Cir. 2012) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)). Accordingly, a defendant is entitled to be present "at any stage of the criminal

---

[9] The Petition states the date of the relevant proceeding as July 14, 2014. (Pet. at 18.) However, there were no proceedings on that date. The record makes clear that petitioner is referring to the appearance on January 14, 2014, approximately one week after the reopened suppression hearing. (*E.g.*, SR144-49.)

proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Stincer*, 482 U.S. at 745.

Here, the January 14 pretrial conference was neither critical to the trial's outcome, nor would petitioner's presence have contributed to the fairness of the proceedings. The sole purpose of the January 14 proceeding – the minutes of which occupy all of two pages – was to resolve whether Officer Pampena had filled out an "aided report" documenting the medical treatment received by Elturkey and, if so, to disclose that report to petitioner. (1/14/2014 Tr. at 2.) Pampena had testified at the reopened suppression hearing the previous week that, while there was no indication in his memo book that he had completed such a form in this case, he believed he did so "[b]ased on practice." (1/8/2014 Tr. at 36-37.)

At the January 14 conference, the prosecutor reported that, following the reopened hearing, Officer Pampena had informed the prosecutor that his belief that he had prepared an aided report was mistaken, and that he had checked his files and determined that he had not completed such a report. (1/14/2014 Tr. at 2.) The court asked the prosecutor whether she was satisfied with this explanation and she responded in the affirmative. (*Id.* at 2-3.) The court, noting that petitioner and codefendant Brooks were "not present in court," advised counsel that it would issue a decision adhering to its original denial of the suppression motions. (*Id.* at 3.)

Petitioner offers no plausible explanation as to how this proceeding was "critical" or how his presence would have contributed to the fairness of the procedure. Officer Pampena was not present at the conference and so petitioner could not have

23

questioned him regarding the existence of the aided report.  However, petitioner and codefendant were able to – and did – explore this issue at trial.  (T. 466-67, 488-95, 543.)  Accordingly, petitioner's due process right to be present did not extend to the brief January 14 conference.

Even if petitioner had a constitutional right to be present at the January 14 conference, counsel validly waived that right.  (1/14/2014 Tr. at 3.)  A defendant can waive the right to be present either personally or through counsel and, "'[a]lthough it is certainly preferable that the waiver come from the defendant directly, there is no constitutional requirement to that effect.'"  *Clark v. Stinson*, 214 F.3d 315, 324-25 (2d Cir. 2000) (quoting *Polizzi v. United States*, 926 F.2d 1311, 1322 (2d Cir. 1991)); *accord Castro v. United States*, 993 F. Supp. 2d 332, 343 (E.D.N.Y. 2014) (citing *United States v. Gagnon*, 470 U.S. 522, 529 (1985)).

Lastly, petitioner "cannot show prejudice from being absent" from the January 14 conference because he was represented by counsel and, as noted, he was permitted to explore the existence of an aided report thoroughly at trial.  *Covington v. Lord*, 275 F. Supp. 2d 352, 359-60 (E.D.N.Y. 2003); *see also Pellington v Greiner*, 307 F. Supp. 2d 601, 606 (S.D.N.Y. 2004) (right-to-be-present claim subject to harmless error review).  Accordingly, there is no merit to petitioner's claim.

**POINT IV: PETITIONER'S EVIDENTIARY CLAIM REGARDING THE VICTIM'S OUT OF COURT IDENTIFICATION IS PROCEDURALLY BARRED AND, IN ANY EVENT, NOT COGNIZABLE ON FEDERAL HABEAS REVIEW (GROUND FOUR OF THE PETITION).**

Petitioner claims that the trial court improperly permitted Officer Pampena to testify that, on the night of the robbery, Elturkey identified petitioner as the person who had taken his phone and wallet. (Pet. at 9, 22-23.) The evidentiary claim is procedurally barred. In any event, the claim is not cognizable on habeas review because the evidence was properly admitted under state law and, even if it were not properly admitted, the admission of the evidence does not implicate the fairness of the proceedings.

### A.     The Claim is Barred on Adequate and Independent State Law Grounds

The evidentiary claim is barred by an adequate and independent state court ground. "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Martinez v. Ryan*, 566 U.S. 1, 9-10 (2012) (citations omitted); *accord Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

Here, the Appellate Division held correctly that petitioner failed to preserve the evidentiary claim regarding the admission of the showup identification. *Ball*, 162 A.D.3d at 681. While petitioner did raise the objection at trial, he did so long after Pampena had testified about Elturkey's identification of petitioner. Indeed petitioner

acknowledged as much but stated that he would rather make the objection "late than never." (T. 597-98.)

New York courts require a criminal defendant to preserve an issue for appellate review by lodging a contemporaneous objection to the challenged conduct. N.Y. C.P.L. § 470.05(2). The Supreme Court has applied the adequate and independent state law doctrine to such contemporaneous objection rules. *See Osborne v. Ohio*, 495 U.S. 103, 123 (1990); *Murray v. Carrier*, 477 U.S. 478, 485-92, 497 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 76 n.5, 85-87 (1977). The Second Circuit has long applied the doctrine to New York's preservation requirement. *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) (citations omitted); *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007); *Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir. 1991).

Indeed, it is a firmly established and regularly followed practice in New York courts to apply the contemporaneous objection rule where, as here, a defendant claims that the People failed to lay a proper foundation for the admission of out-of-court identification testimony. *See*, *e.g.*, *People v. Davis*, 139 A.D.3d 966, 967 (2d Dep't 2016); *People v. Hester*, 122 A.D.3d 880 (2d Dep't 2014); *People v. McKenzie*, 2 A.D.3d 348 (1st Dep't 2003); *People v. Jenkins*, 205 A.D.2d 642, 643 (2d Dep't 1994); *People v. Carrillo*, 204 A.D.2d 170 (1st Dep't 1994); *accord Mendez v. Graham*, No. 11 Civ. 5492 (ARR), 2012 U.S. Dist. LEXIS 179523, at *29-30, 34-36 (E.D.N.Y. Dec. 18, 2012) (unpreserved claim that officer improperly testified that petitioner was identified at a lineup procedurally barred by independent and adequate state grounds). Accordingly, petitioner is procedurally barred from challenging the

admission of Pampena's testimony regarding Elturkey's showup identification of petitioner.

This Court may not review a procedurally defaulted claim unless petitioner can show "cause for the default and prejudice from a violation of federal law," *Martinez*, 566 U.S. at 10 (citations omitted); *Coleman*, 501 U.S. at 729-30, or that "a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *see also McQuiggin v. Perkins*, 569 U.S. 383, 392-93 (2013) (fundamental miscarriage of justice exception "grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons") (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).  Here, petitioner does not, and cannot, demonstrate either.

Petitioner fails to allege a miscarriage of justice.  The Petition is devoid of any allegations of "new evidence" tending to show that petitioner is actually innocent of his crimes.  *Schlup v. Delo*, 513 U.S. 298, 325 (1995); *accord House v. Bell*, 547 U.S. 518, 536-37 (2006); *Rajaratnam v. United States*, 736 F. App'x 279, 282 (2d Cir. 2018) ("Actual innocence, however, excuses procedural default only when a petitioner comes forward with 'new evidence' and shows that 'it is more likely than not that no reasonable juror [aware of that evidence] would have convicted him'") (quoting *Schlup*, 513 U.S. at 327).

Nor has petitioner demonstrated cause for his procedural default.  Because petitioner fails to demonstrate cause, the Court need not address whether petitioner was prejudiced.  *See Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 127 (2d Cir. 1995);

*Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Dzebolo v. Perez*, No. 07 Civ. 3421 (ER)(GAY), 2012 U.S. Dist. LEXIS 144936, at *32 (S.D.N.Y. Jan. 12, 2012).  In any event, there is no prejudice because, as demonstrated below, habeas relief is unavailable for petitioner's state law-based evidentiary claim.

## B.    The Claim is Not Cognizable on § 2254 Review

Habeas relief is unavailable for petitioner's challenge to the admission of Officer Pampena's testimony regarding Elturkey's out-of-court identification. Inquiry into a state court's application of state evidentiary law "is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "Under Supreme Court jurisprudence, a state court's evidentiary rulings, even if erroneous under state law, do not present constitutional issues cognizable under federal habeas review." *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 72-73 (2d Cir. 2011) (citing *Crane v. Kentucky*, 476 U.S. 683, 689 (1986)).  In order to warrant habeas relief, petitioner must show that the state court made an evidentiary error that "violated an identifiable constitutional right and was 'so extremely unfair that its admission violates fundamental conceptions of justice.'" *Delancey v. Lee*, No. 15 Civ. 891 (RRM)(CLP), 2019 U.S. Dist. LEXIS 192295, at *47-48 (E.D.N.Y. Nov. 4, 2019) (quoting *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998)).

As Judge Donnelly recently affirmed, evidentiary claims of "bolstering" based on third-party testimony as to an out-of-court identification are not cognizable on

habeas review because they do not implicate federal rights.  *Vasquez v. LaClair*, No. 13 Civ. 7136 (AMD), 2018 U.S. Dist. LEXIS 108390, at *21 (E.D.N.Y. Jun. 28, 2018) (collecting cases); *accord Franco v. Lee*, No. 10 Civ. 1210 (SJF), 2013 U.S. Dist. LEXIS 26210, at *20-25 (E.D.N.Y. Feb. 26, 2013) (same); *Snow v. Reid*, 619 F. Supp. 579, 582 (S.D.N.Y. 1985) (Brieant, J.) ("The concept of 'bolstering' really has no place as an issue in criminal jurisprudence based on the United States Constitution").  Indeed, in *Stovall v. Denno*, 388 U.S. 293 (1967), the Supreme Court found it unremarkable that, like Officer Pampena here, several police officers at trial echoed the victim's testimony that she identified the defendant at a showup.  *Id*. at 295.

Moreover, even if such claims were a basis for habeas relief, petitioner's claim here would not warrant such relief because there was no erroneous state law ruling. As the Appellate Division correctly held in the alternative, the People satisfied all foundational requirements for admission of Pampena's testimony pursuant to state law.  *Ball*, 162 A.D.3d at 681 (citing N.Y. C.P.L. 60.25).[10]  Officer Pampena was permitted to testify only after Elturkey testified that he could not identify petitioner or Brooks in court because it had been a "long time" – "two or three years" – since the robbery and he was having difficulty remembering.  (T.353-54, 374, 377-78, 384-85.)

---

[10] C.P.L. § 60.25 provides an exception to New York's general prohibition, on hearsay grounds, on testimony as to another's out-of-court identification.  *See People v. Trowbridge*, 305 N.Y. 471 (1953).  Specifically, a police officer is permitted to testify about a witness' prior identification if the witness testifies, in relevant part, that "[h]e or she is unable at the proceeding to state, on the basis of present recollection, whether or not the defendant is the person in question."  C.P.L. § 60.25(1)(a)(iii); *Vasquez*, 2018 U.S. Dist. LEXIS 108390 at *20-21.

In any event, Pampena's testimony that Elturkey had identified petitioner at the scene did not deprive petitioner of a fair trial, that is, "a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The evidence against petitioner was "overwhelming."  *Vasquez*, 2018 U.S. Dist. LEXIS 108390 at *23. Petitioner was found running away from the scene of the robbery and, when stopped by Officer Pampena, he blurted out that he had just "bought" the phone he was holding at the precise location where the robbery had taken place.  Upon further investigation, Pampena discovered that petitioner was carrying $250 in cash: the same amount, in the same denominations, as the cash stolen from the victim. Moreover, Elturkey told police that the phone found on petitioner had been stolen from him, and he substantiated that claim by entering the code to unlock that phone. Elturkey confirmed that Pampena had arrested the man who had rifled through his pockets and taken his phone and wallet.  Accordingly, under the circumstances, "Officer [Pampena's] testimony that the victim confirmed that petitioner was the person who [robbed] him while petitioner was in police custody did not render the trial unfair." *Vasquez*, 2018 U.S. Dist. LEXIS 108390 at *24.

### POINT V:  THE UNEXHAUSTED INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM LACKS MERIT.

Petitioner's ineffective trial counsel claim based on counsel's alleged failure to investigate unnamed alibi witnesses and counsel's waiver of petitioner's presence at pretrial conferences is both unexhausted and plainly meritless.

## A.    The Claim is Unexhausted

A state prisoner's federal habeas petition "shall not be granted" unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-44 (1999).    In order to exhaust state remedies, a petitioner must "fairly present" each federal claim in each appropriate state court, including a state supreme court with powers of discretionary review, "thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  In New York, this means that petitioners must fairly present each on-the-record claim to the Appellate Division on direct appeal and, if unsuccessful there, to the New York Court of Appeals in an application for a certificate granting leave to appeal.  *Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (citing *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005)).  Claims relying on evidence not in the record, or "mixed" claims relying on both record and other evidence, may be exhausted by way of a post-conviction motion, most often one pursuant to C.P.L. § 440.10.  *See Pierotti v. Walsh*, 834 F.3d 171, 178 (2d Cir. 2016); *People v. Evans*, 16 N.Y.3d 571, 575 & n.2 (2011).  Here, petitioner never asserted an ineffective counsel claim in any state court.  Accordingly, the claim is wholly unexhausted.

## B.    The Claim is Meritless

Notwithstanding petitioner's failure to exhaust, the Court may deny (but not grant) relief, because this conclusory and unsupported ineffective trial counsel claim

is plainly meritless.  *See* 28 U.S.C. § 2254(b)(2); *Bey v. Chappius*, No. 16 Civ. 7084 (KAM), 2019 U.S. Dist. LEXIS 170313, at *20-22 (E.D.N.Y. Sep. 30, 2019).  To establish constitutionally ineffective assistance of counsel, petitioner must show that counsel's representation fell "below an objective standard of reasonableness," and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Review of attorney conduct under *Strickland* is "highly deferential," *id*. at 689, and the "reasonable probability" of a different result must be "sufficient to undermine confidence in the outcome," *id*. at 694.

Petitioner argues that, prior to the court granting him permission to represent himself, attorney Povman rendered ineffective assistance by: (1) failing to investigate "alibi witnesses;" (2) "constant[ly]" waiving petitioner's presence at pretrial conferences; and (3) not expressing sufficient "interest" in petitioner's defense.  (Pet. at 26.)  As an initial matter, the Petition provides no facts regarding alibi witnesses. Petitioner does not identify any witnesses, state how they would have supported an alibi defense or state what efforts he made, if any, to secure these unnamed witnesses' testimony at trial.  Indeed, petitioner does not even identify the number of purported alibi witnesses; the two times the issue is raised in the Petition, petitioner switches between the plural and singular.  (Pet. at 26 ("witnesses"), 27 ("witness").)  Petitioner is required to "state the facts supporting each ground" for relief.  Rule 2(c), Rules Governing Section 2254 Cases in the United States District Courts.  The failure to

comply with this requirement in any way, by itself, requires rejection of the alibi witness aspect of the ineffective counsel claim.

In any event, the record does not support such a claim. Petitioner never raised the issue of alibi testimony – let alone provide the People with the required statutory notice that he would present such testimony, *see* C.P.L. § 250.20 – when attorney Povman was representing him prior to trial; nor did he do so during trial while representing himself with Povman as legal advisor. (T. 16.) Even while represented, petitioner was a vocal advocate on his own behalf throughout the proceedings, and there is no reason to believe he would not have raised the issue of alibi witnesses. The only defense witnesses discussed on the record were EMT Gonzales – who came to court to testify for petitioner – and a vague reference to "the Cohen family," whom petitioner clarified were "[n]ot alibi" witnesses but rather witnesses to petitioner's arrest. (T.303-04.) Accordingly, the ineffective counsel claim based on alibi witnesses is plainly meritless.

Petitioner's claim that Povman repeatedly waived petitioner's presence is belied by the record. The record reveals that counsel waived petitioner's presence on just one occasion: January 14, 2014. As to that waiver, petitioner had no constitutional right to be present, as discussed above. *See supra* Point III. Petitioner does not – and cannot – identify any beneficial purpose he might have accomplished had he been present for that brief appearance, or how his presence would have created any probability of a different verdict.

Lastly, petitioner's unsupported and conclusory claim that Povman did not express sufficient interest in his case is not a basis for habeas relief.  Viewed in its totality, the record reveals that Povman was well-prepared at each appearance.  Her performance over the two dates of the suppression hearing showed that she was knowledgeable regarding the facts and a vigorous advocate for petitioner's rights.  Moreover, while petitioner chose to represent himself at trial, he continued to consult with Povman, who continued to advocate on petitioner's behalf as his legal advisor.  (*E.g.*, T.36, 41, 47, 88-89, 302-03, 484-85, 488, 529-31, 549, 730.)  Petitioner fails to identify any actions or omissions by Povman indicating a lack of interest, much less explain how there was a "reasonable probability" of a different result had counsel acted differently.  Accordingly, the ineffective assistance claim is plainly meritless.

## CONCLUSION

For the reasons set forth above, this Court should deny the petition for a writ

of habeas corpus and should not issue a certificate of appealability.

Dated:    New York, New York
          December 13, 2019

                                        Respectfully submitted,

                                        LETITIA JAMES
                                        *Attorney General*
                                        *State of New York*
                                        Attorney for Respondent

                              By:    */s/ Matthew B. Keller*
                                        MATTHEW B. KELLER
                                        Assistant Attorney General
                                        28 Liberty Street
                                        New York, New York 10005
                                        (212) 416-6072

LISA E. FLEISCHMANN
MATTHEW B. KELLER
   *Assistant Attorneys General*
        *of Counsel*

35